Argued June 20, affirmed August 27, 1973

# GREATER PORTLAND NEWCOMERS SERVICE, INC., *Petitioner, v.* MORGAN, *Respondent.*

513 P2d 493

*Bruce B. Samson,* Portland, argued the cause for petitioner. On the brief were Rankin, Walsh, Ragen & Roberts, and Ronald K. Ragen and Douglas R. Courson, Portland.

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and FOLEY and THORNTON, Judges.

THORNTON, J.

Petitioner seeks judicial review of a decision of an Employment Division referee holding that petitioner was liable for unemployment taxes on account of fees paid by petitioner to women termed "hostesses," who work part-time in petitioner's advertising business. These women are usually housewives. Their job is to locate newly arrived householders in the Portland area, call on the new residents, give them a copy of petitioner's publication which advertises local merchants, and inquire as to the newcomers' possible need

for a variety of items such as draperies and automobiles. Each hostess is assigned an area of the city within which she is to locate newcomers and distribute this literature to them. This unsolicited literature is free. Generally the hostess lives in the area which she services.

Petitioner contends that the above-described services are exempt because under ORS 657.080[1] "employment" does not include services performed in the distribution of a "shopping news" and (2) that ORS 657.040[2] does not apply in the situation where the alleged employe is not subject to the "hazards" of unemployment.

The evidence produced at the hearing before the

[1] ORS 657.080 provides:

" 'Employment' does not include service performed by an individual in the delivery or distribution of newspapers or shopping news, not including delivery or distribution to any point for subsequent delivery or distribution or service performed by an individual in the delivery or distribution of newspapers whose remuneration primarily consists of the difference between the amount he pays or is obligated to pay for the newspapers and the amount he receives or is entitled to receive on distribution or resale thereof."

[2] ORS 657.040 provides:

"Services performed by an individual for remuneration are deemed to be employment subject to this chapter unless and until it is shown to the satisfaction of the administrator that:

"(1) Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and

"(2) (a) Such individual customarily is engaged in an independently established business of the same nature as that involved in the contract of service; or

"(b) Such individual holds himself out as a contractor and employs one or more individuals to assist in the actual performance of services and who meets the following criteria shall be deemed to have an independently established business:

referee showed that petitioner's business enterprise operates as follows: Petitioner solicits Portland merchants to advertise their goods and services in an informal publication which it assembles and distributes to newcomers. Although the record does not contain a sample copy, we gather from the testimony that petitioner's publication consists mainly of a collection of advertising leaflets or flyers. The individual merchant can prepare his own leaflet for insertion in petitioner's publication, or petitioner will perform this service for him. Petitioner then assembles the printed inserts, stapling them together.

According to petitioner the purpose of the publication and personal approach is to familiarize newcomers with shopping facilities available in their area and to induce them to become customers. New materials are picked up periodically by the hostesses. The pamphlets may vary from sector to sector of the city, depending on the advertisements which they contain.

When a hostess is engaged by petitioner she is required to sign a contract. She is paid a flat rate of $3 for each visit to a new household, which fee is paid monthly. Petitioner requires the hostess to pay all her own expenses and to submit a written report on each visit. Hostesses find their own leads, distribute the

---

"(A) The individual customarily has two or more effective contracts.

"(B) The individual as a normal business practice utilizes separate telephone service, business cards and engages in such commercial advertising as is customary in operating similar businesses.

"(C) The individual is recognized by the Department of Revenue as an employer.

"(D) The individual furnishes substantially all of the equipment, tools and supplies necessary in carrying out his contractual obligations to his clients."

shopping news in their own way and on their own schedule, subject only to petitioner's policy that they be courteous and make their calls at reasonable hours. The supervisor goes with the hostess the first day; they make two or three calls; the supervisor handles the calls, talking with the newcomers and showing the new hostess the procedure to be used. Thereafter the hostesses are on their own. Each hostess is free to make as many or as few calls each month as she wishes, depending upon the number of new families moving into her area; however, they average 40-50 visits per month.

Petitioner contends that its hostesses are distributing "shopping news" (exempt under ORS 657.-080), and that it was improper for the referee to apply ORS 657.040. Do the services performed by petitioner's hostesses constitute "the delivery or distribution of * * * shopping news" within the meaning of ORS 657.080?

The above-quoted term is not defined in ORS 657.080, and there are no Oregon cases interpreting this section. Further research for decided cases in states whose statutes include a similar exemption, has not revealed any decision construing this exemption. In *Union Leader Corp. v. Newspapers of New England, Inc.,* 284 F2d 582 (1st Cir 1960), however, the court said that:

> "A shopper, also known as a throwaway, is a *newspaper* containing principally advertising which is distributed free, and without request, at doorways." 284 F2d at 583, n 2. (Emphasis supplied.)

■ A logical inference from ORS 657.080 is that "shopping news" refers to a publication resembling a newspaper, which contains advertising for a merchant,

various merchants, or other listings of items for sale. It is common knowledge that publications of this type are often distributed house-to-house in residential areas, or mailed to households, addressed to "occupants." Local "shopping news" publications are sometimes also available free at neighborhood grocery store checkout counters.

As already noted, the hostesses, in addition to distributing the literature, pay a personal visit during which they also seek information as to what items the new family may need or be seeking. Petitioner's president testified that this information is contained in the report each hostess is required to file in order to get her fee for the visit.

An employer who seeks exemption from unemployment taxes under the Employment Division Law has the burden to prove that the employment in question falls within the terms of the particular exemption. *Culp v. Peet,* 3 Or App 406, 474 P2d 13 (1970). The applicable principle is "that exempting statutes are strictly construed and exempt only what is strictly within their terms." *Waterbury Savings Bank v. Danaher,* 128 Conn 78, 83, 20 A2d 455, 458 (1941).

■ Even assuming for purposes of argument that petitioner's publication can be considered a "shopping news," we conclude that petitioner has not sustained its burden of proof in seeking to bring itself within the "shopping news" exemption. The language of ORS 657.080 indicates that the exemption is limited to individuals who are engaged in the "delivery or distribution of newspapers or shopping news." The evidence establishes that the hostesses are not merely delivery persons; they perform other important services, in addition to distributing a pamphlet advertising local

merchants. We do not believe that the exemption granted in ORS 657.080 contemplates such additional activity as searching for new households, a personal visit, an interview as to household needs, or the other actions taken by petitioner's hostesses. We hold that the referee did not err as the hostesses are not engaged in distributing a "shopping news" within the meaning of ORS 657.080.

Petitioner's second contention is that ORS 657.-040 was improperly applied. Petitioner argues that the Employment Division Law was designed to eliminate the social evil of unemployment; since the hostesses are housewives working only for extra money, they are not subject to the dangers of unemployment; therefore petitioner should not be liable for unemployment taxes. We cannot agree. A similar contention was thoroughly considered and rejected by this court in *Buell Chapel, Inc. v. Morgan,* 14 Or App 8, 510 P2d 583 (1973). *See also, Yurs v. Director of Labor,* 94 Ill App2d 96, 235 NE2d 871 (1968).

■ The fact that personal services are rendered for a short period or on intermittent occasions does not establish that the compensation for the services is exempt from unemployment insurance assessment. *Buell Chapel, Inc. v. Morgan,* supra.

4. Petitioner has not met its burden of showing that the hostesses are engaged in an independently established business, ORS 657.040 (2)(a),[9] nor has he met the criteria of ORS 657.040 (2)(b).[9] We therefore hold that the referee properly applied ORS 657.040 and properly concluded that the services performed by the hostesses were employment within the meaning of the Employment Division Law.

Affirmed.