Submitted on record and briefs March 6, affirmed April 1, 1974

GOLLENDER, *Petitioner, v.* MORGAN, *Respondent.*

520 P2d 453

Morton Gollender, Forest Grove, pro se, petitioner.

Lee Johnson, Attorney General, W. Michael Gillette, Solicitor General, and John W. Burgess, Assistant Attorney General, Salem, for respondent.

Before SCHWAB, Chief Judge, and LANGTRY and THORNTON, Judges.

THORNTON, J.

Petitioner seeks judicial review of a decision of the Employment Appeals Board reversing a decision of the referee and denying petitioner unemployment compensation benefits. Petitioner contends that the Board erred in ruling that he was disqualified because the remuneration he received from his employer for the months of June, July and August 1973 constituted part of a "guaranteed wage." ORS 657.205 (1) (a).[1]

---

[1] ORS 657.205 (1) (a) provides:

"(1) Subject to the provisions of subsections (2) and (3) of this section, an individual is disqualified for benefits for any week with respect to which he is receiving, will receive, or has received:

"(a) Remuneration as a dismissal or separation allowance, as vacation or as *a guaranteed wage* * * *." (Emphasis supplied.)

Petitioner was employed in 1966 as a professor at Pacific University pursuant to a contract for the 'academic year,' which was from September 1 to on or about May 31. His work assignment at Pacific was divided into half-time teaching and half-time research work. His research was as principal investigator for a research grant from the National Institutes of Health. Pacific renewed his contract annually for each academic year during the period September 1, 1966, through May 31, 1972.

On December 21, 1971, petitioner was notified that Pacific had decided that he was not to be given permanent tenure. Following unsuccessful efforts to determine the reasons for this action, petitioner signed a final one-year contract on August 15, 1972. This last notice of appointment was for the period September 1, 1972, through May 31, 1973. The contract instrument specified that petitioner's appointment was for the 'academic year,' and that the salary of $13,818 was to be paid in 12 instalments. The evidence was that all professors at Pacific, including petitioner, are paid in 12 monthly instalments and that at the time of petitioner's initial appointment he also had requested to have his salary paid in the same manner. Petitioner's official duties ended May 31, 1973, and he had no official duties in connection with his employment thereafter, except to pack some research equipment and to assist Pacific's business office in the preparation of some overdue fiscal reports to the National Institutes of Health in connection with the research grant. However as previously noted Pacific was required to make payments monthly through August 31, 1973, of the balance of his annual academic salary. There was also evidence that petitioner and

his family were covered under Pacific's Blue Cross health insurance plan for the entire 12-months' period so that if petitioner or any member of his family had need of health care during this final three months' period such care was available.

At the time of the hearing, August 9, 1973, the August salary payment was not yet due, although the June and July payments had been made to petitioner.

Petitioner filed a claim for unemployment benefits on June 11, 1973. The employer contested the claim, but the respondent determined the claim was valid. The employer requested a hearing before a referee. The referee supported the respondent's decision and ruled in petitioner's favor. The employer appealed to the Employment Appeals Board, which reversed the referee's decision. This petition for judicial review followed.

Petitioner contends that the Board erred as follows:

(1) Findings of Fact No. 2[2] and No. 6[6] are erroneous and not supported by substantial evidence.

(2) Even if the above findings are valid the Board's decision "was unlawful in substance."

We are of the opinion that the Board's order must be affirmed.

This court may reverse or remand the Board's order only if it finds that

"\* \* \* the order is not supported by reliable,

---

[2] Finding of Fact No. 2:
"Prior to the termination of each academic year thereafter, claimant entered into new contract for the academic year to follow."

[6] Finding of Fact No. 6:
"By the terms of this contract, claimant was paid an annual salary of $13,818 payable in 12 monthly installments."

probative and substantial evidence in the whole record * * *." ORS 183.480 (7) (d) ; *Harvey v. Morgan,* 9 Or App 123, 124, 496 P2d 30 (1972).

Benefits under the unemployment compensation laws are not payable to all persons who are out of employment, but only to those who are qualified in accordance with prescribed requirements and conditions. *Battaglia v. Bd. of Review, Employment Security Div.,* 14 NJ Super 24, 81 A2d 186 (1951).

■ The test of whether a person is "unemployed" within the meaning of our unemployment compensation law is to be determined by the language of that law rather than by rules applicable in determining the existence and termination of the employer-employe relationship for some other purpose. *Buell Chapel, Inc. v. Morgan,* 14 Or App 8, 510 P2d 583, Sup Ct *review denied* (1973). Here petitioner's eligibility is determined not by when his teaching and research duties ended but by the terms of his employment contract with reference to when petitioner would cease receiving remuneration from his former employer for services performed.

■ Although petitioner was employed to teach and conduct research during the academic year (September 1 to May 31), the contract provided that he would receive his salary in 12 equal monthly instalments. While his professional duties may have ended with the close of the academic year on May 31 (except for the packing of the research equipment and the preparation of the fiscal reports to the National Institutes of Health), he was still on the payroll until September 1. He was also covered by Pacific's health insurance plan during this entire period.

■ Petitioner's status during the three-months' period following the close of the academic year is analogous to that of an employe who is on a paid vacation or paid terminal leave. The authorities are legion that an employe who is on vacation or terminal leave and receiving compensation by way of vacation pay or terminal leave pay is ineligible for unemployment compensation during such period.[④] Moreover, this result is not affected by the fact that the vacation with pay is given in conjunction with a termination of the employe's services, so that the employe is not to return to his former employment after the vacation period. *See, Blitz v. Corsi,* 275 App Div 1015, 91 NYS2d 770, 771, *affirmed without opinion* 302 NY 573, 96 NE2d 889 (1949). As the court said:

> "* * * [N]o legal sophistry can alter the fact that * * * [the employe] was actually on the state's payroll throughout this period." 275 App Div 1015, 91 NYS2d at 771.

In *Zimbrick v. Morgan,* 4 Or App 138, 477 P2d 908 (1970), we held that a workman whose employment was terminated and who received a lump sum severance or dismissal pay, was not entitled to unemployment benefits during the weeks such pay was allocated and received.

For the reasons which follow we find no merit in petitioner's assignments of error.

(1) Although petitioner now claims that not all of his contracts with Pacific were entered into before the end of the preceding academic year, he testified that:

> "* * * If the contract would be renewed, then notice was given by April 15th, I think. The con-

---

[④] See cases collected in 81 CJS 243, Social Security and Public Welfare § 159.

tracts have to be out by April 15th for the next * * * the coming year * * *."

Moreover, this is not one of the material facts on which the ultimate conclusion is based. *Wright v. Insurance Commissioner,* 252 Or 283, 290, 449 P2d 419 (1969).

(2) We are unable to discern how the 'distinction' which petitioner is seeking to draw here changes the result. The Board's Finding of Fact No. 6 is supported by the evidence.

(3) Finally petitioner attacks the Board's ultimate finding that his June, July and August salary payments should be considered 'guaranteed wage' payments.

ORS 657.205 (1) (a) provides:

"(1) Subject to the provisions of subsections (2) and (3) of this section, an individual is disqualified for benefits for any week with respect to which he is receiving, will receive, or has received:

"(a) Remuneration as a dismissal or separation allowance, as vacation or as *a guaranteed wage* * * *." (Emphasis supplied.)

The term "guaranteed wage" is not defined in ORS ch 657. Webster defines the term "guarantee," as, among other things:

"* * * * *

"3. An agreement by which one person undertakes to secure another in the possession, enjoyment, or the like, of something; a guaranty.

"* * * * *." Webster's New International Dictionary (2d ed 1961).

The same reference defines the term "guaranteed day *or* week" as:

"The guarantee of employment for a given period, and hence of wages for that period."

The Random House Dictionary of the English Language (1967) gives the following definition:

> "**Guaranteed annual wage,** a provision in a contract with an employer guaranteeing the employee a minimum income or work over a period of one year. Also called **annual wage.**"

■ Of the various definitions of "guaranteed wage" we find the following to be the most appropriate to the legislative intent expressed in ORS 657.205 (1) (a):

> "* * * [T]he assurance by an employer that the covered worker will draw a fixed wage per year divided into a set number of pay periods * * *." 11 Labor L J 125, 126 (1960).

The Board found:

> "The claimant and his employer for many years entered into an agreement where he was to be paid a specified amount each month under the terms of a specific contract. These agreements then have the effect of guaranteeing claimant 1/12th of his annual salary at the end of each and every month for a period of 12 months commencing September 1 * * *."

The Board's findings are in accord with and supported by the evidence (ORS 183.480 (7)), and its conclusions in accord with the last-quoted definition, which we hereby adopt.

Accordingly, we conclude that during a period such as we are dealing with here, the employe, although not actually working, is deemed not to be 'unemployed' within the meaning of our unemployment compensation law and is disqualified from receiving unemployment compensation benefits.

Affirmed.