Argued July 6, reversed September 16, 1976

# WOODY, *Respondent,*
## *v.*
# WAIBEL, *Petitioner.*

554 P2d 492

*Merle A. Long,* of Long, Bodtker and Post, Albany, argued the cause and filed briefs for petitioner.

*Bryan L. Peterson,* of Peterson, Susak & Peterson, P.C., Portland, argued the cause and filed a brief for respondent.

O'CONNELL, J.

**O'CONNELL, J.**

This is an action for damages arising out of defendant's logging operation. Plaintiff, who owned a log truck, was hired by defendant to haul logs from a loading area in the forest to a log dump in Oregon City. During the course of the operation plaintiff was injured when one of defendant's employees caused a tree to fall on plaintiff's truck. Plaintiff filed a tort action in circuit court, whereupon defendant and Workmen's Compensation Board of Oregon, as intervenor, contended that plaintiffs' remedy was limited to Workmen's Compensation. Pursuant to ORS 656.384(2), a hearing was held and the trial court determined that plaintiff was acting in the capacity of an independent contractor when the injury occurred. The trial court held that plaintiff was, therefore, entitled to maintain an action for damages. Defendant appealed and the Court of Appeals affirmed. *Woody v. Waibel,* 24 Or App 341, 545 P2d 889 (1976). We granted review in order to re-examine the employee-independent contractor distinction.

■ The Court of Appeals applied the traditional "control" test to the trial court's findings of fact,[1] and after

[1] The findings of fact were as follows:

"(a) Plaintiff and defendant had agreed that plaintiff would haul timber from defendant's logging operation to a destination designated by defendant.

"(b) That defendant would pay to plaintiff for such hauling so much per thousand based upon the distance of the haul and the grade of the timber. The parties discussed these factors and agreed upon the price to be paid. The plaintiff would be paid every two weeks and would be paid up to 10 days prior to the date of pay.

"(c) Either party could terminate the agreement to haul timber at any time.

"(d) The loader was an employee and under the direction of defendant in loading the truck; however, plaintiff had a right to object and have corrected an improper loading.

"(e) Plaintiff was not restricted to haul only for defendant and in fact on several instances hauled at other places in slack periods or when defendant's 'show' was being moved.

"(f) Plaintiff provided and was responsible for the operating and

noting that some of the circumstances suggested employee status while others suggested contractor status,[2] concluded that plaintiff was an "independent contractor."[3]

The Workmen's Compensation Act, which is applicable only to the relationship of master and servant, is predicated upon the assumption that it is possible in every case for the courts to distinguish between a servant and an independent contractor. An examination of the cases, both in the workmen's compensation field and in the area of vicarious liability, reveals that in many instances it is impossible through the employment of any rational process to determine into which of the two categories the employed person falls. Because this is so, it has been urged, by one commentator in a careful and thorough re-appraisal of the independent contractor rule, that the distinction be

all expenses of his own truck and had the right to employ other drivers for the truck.

"(g) Defendant claims plaintiff was an employee, however, he made no deductions from payment to plaintiff for Workmen's Compensation, Social Security or Income Tax.

"(h) Plaintiff had the entire responsibility, after being loaded, for the delivery to the appointed destination and had the duty to rectify any condition that occurred affecting the ability to deliver.

"(i) Plaintiff was classified as an independent contractor by the P.U.C., and carried his own insurance. Plaintiff claims he considered himself an independent contractor and further claims, without contradiction, that defendant had previously stated to him that he was not covered by Workmen's Compensation and had to get his own insurance."

[2] Circumstances cited as evidence of an employment relationship were: (1) the right of either party to terminate the agreement without liability; (2) the extent of defendant's control over plaintiff's work schedule; and (3) the fact that the parties did not contract for the performance of a "specific piece" of work. Circumstances cited as supportive of the conclusion that plaintiff is an independent contractor were: (1) plaintiff was paid on the basis of the amount of timber hauled rather than an established wage; (2) plaintiff furnished and maintained his own equipment; (3) plaintiff was allowed to and at times did both employ assistants and work for other logging companies.

[3] Chief Judge Schwab's concurrence to the Court of Appeals opinion in this case stated that "whether plaintiff is an employe or an independent contractor is for the trier of fact to decide." There appears to be Oregon

[ 192 ]

abolished in the cases involving vicarious liability, thus imposing liability upon both the employer and the person employed.[4] However attractive this proposal may be in the area of vicarious liability, the adoption of it in the workmen's compensation cases is not appropriate. In the first place the legislature has, as we have already mentioned, assumed that a workable distinction can be made between independent contractor and servants and therefore we must draw the line as best we can, even if in a particular case the choice may be more intuitive than logical. Secondly, there are criteria in the workmen's compensation area which provide a foundation in a greater number of cases for deciding whether workmen's compensation should or should not be recognized, thus justifying the continued recognition of the distinction, whatever might be said in favor of abolishing the distinction in cases involving vicarious liability.

■ The criteria in the workmen's compensation cases are keyed to the purpose of the workmen's compensation laws. That this purpose is relevant in determining coverage in workmen's compensation cases was recognized by this court in *Bowser v. State Ind. Acc. Comm.*, 182 Or 42, 185 P2d 891 (1947).[5] The idea that the

---

authority supporting this proposition. *See, Butts v. State Ind. Acc. Com.*, 193 Or 417, 239 P2d 238 (1951); and *Wallowa Valley Stages v. The Oregonian Pub. Co.*, 235 Or 594, 386 P2d 430 (1963) (vicarious liability). It is true that there may be questions concerning facts surrounding the arrangement between the parties which would be relevant in determining control. In this sense, the question is one for the trier of fact. However, where there is no dispute as to what the arrangement is, the question of employee or independent contractor status is one of law for the court. To the extent that the *Butts* and *Oregonian* cases can be interpreted as recognizing a contrary principle, they must be repudiated.

[4] Comment: *Risk Administration in the Marketplace: A Reappraisal of the Independent Contractor Rule,* 40 U Chi L Rev 661 (1973).

[5] *Cf., Singer Sewing Machine Co. v. Unemployment Comp. Com.,* 167 Or 142, 103 P2d 708, 116 P2d 744, 138 ALR 1398 (1940). *But see, Scales v. First State Bank,* 88 Or 490, 172 P 499 (1918); *Brothers v. Industrial Acc. Com.,* 139 Or 658, 12 P2d 302 (1932); *Harris v. State Ind. Acc. Com.,* 191 Or 254, 230 P2d 175 (1951).

[ 193 ]

statutory purpose rather than the common law test of right to control should be the basis for defining the term "employee" was first developed in *National Labor Relations Board v. Hearst Publications,* 322 US 111, 64 S Ct 851, 88 L Ed 1170 (1944). *See also, United States v. Silk,* 331 US 704, 67 S Ct 1463, 91 L Ed 1757 (1947). It has been recommended that the determination of whether a person is a servant or an independent contractor under workmen's compensation laws should not rest upon the common law test based upon the degree of the employer's right of control, but should focus instead upon factors which are relevant to the purpose of the workmen's compensation system.[6] This purposive approach is fully developed in 1A Larson's Workmen's Compensation Law § 43.40 et seq. Starting

---

[6]

"As an integrated system of social welfare legislation, workmen's compensation embodies two principal and unique social policy purposes. These can be characterized as the social bargain and social insurance purposes. The first of these is related to the immediate impetus for the adoption of this legislation. The impetus, of course, was to alleviate the plight of injured workers who often suffered without remedy under the common law. This purpose has been characterized as 'a socially-enforced bargain which compels an employee to give up his valuable right to sue in the courts for full recovery of damages * * * in return for a certain, but limited, award. It compels the employer to give up his right to assert common-law defenses in return for assurance that the amount of recovery by the employee will be limited.' (Quoting from Van Horn v. IAC, 219 Cal App2d 457, 467, 33 Cal Rptr 169, 174 (1963). An important corollary to the social bargain thus struck was that its terms are to be construed liberally with a view toward extending its benefits.

"The second principal social policy purpose was the social insurance form through which workmen's compensation was to operate. [Fn. omitted] This would be its risk distribution aspect. The fact that modern industrial life will inevitably generate work-related injuries and possibly death is one of the major premises underlying workmen's compensation. * * * Therefore, the cost of these injuries and fatalities is to be distributed throughout society and viewed as a cost of doing business." Note, *Employee or Independent Contractor: The Need For a Reassessment of the Standard Used Under California's Workmen's Compensation,* 10 U San Fran L Rev 133, 136-37 (1975).

*See also,* Note, 37 Or L Rev 88, 89 (1957): "Too frequently it appears that the courts, in attempting to determine whether the employer did or did not have the 'right to control,' have failed to take account of the societal considerations which call for the differentiation between a servant and an independent contractor, and have made the search for 'right to control' the sole consideration. This is another example of mechanical jurisprudence."

with the premise that compensation legislation is based upon the theory that the cost of industrial accidents should be borne by the consumer as a part of the cost of the product, Larson says that

> "* * * It follows that any worker whose services form a regular and continuing part of the cost of that product, and whose method of operation is not such an independent business that it forms in itself a separate route through which his own costs of industrial accident can be channelled, is within the presumptive area of intended protection. * * * 1A Larson's Workmen's Compensation Law § 43.51 (1973).

He describes the test as "the relative nature of the work test" consisting of the following ingredients:

> "* * * [T]he character of the claimant's work or business — how skilled it is, how much of a separate calling or enterprise it is, to what extent it may be expected to carry its own accident burden and so on — and its relation to the employer's business, that is, how much it is a regular part of the employer's regular work, whether it is continuous or intermittent, and whether the duration is sufficient to amount to the hiring of continuing services as distinguished from contracting for the completion of a particular job."[7]

The acceptance of this analysis as a controlling test for determining the distinction between an independent contractor and a servant would make it unnecessary to find a right to control in the employer. Our statutes

---

[7] 1A Larson Workmen's Compensation Law § 43.52. *See also,* Judge Conford's dissent in *Marcus v. Eastern Agricultural Ass'n., Inc.,* 58 N J Super 584, 596, 157 A2d 13 (Super Ct App Div 1959): "The test in the type of case before us here must, therefore, be essentially an economic and functional one * * *. The extent of economic dependence of the worker upon the business he serves and the relationship of the nature of his work to the operation of that business." On appeal, Judge Conford's dissent was adopted by the New Jersey Supreme Court in 32 N J 460, 161 A2d 247 (1960).

*See also* Justice Smith's dissenting opinion in *Powell v. Appeal Board of Michigan Emp. Sec. Com'n.,* 345 Mich 455, 75 NW2d 875, 886 (1956): "The test employed is one of economic reality. It looks at the task performed, whether or not it is a part of a larger common task, ' "a contribution to the accomplishment of a common objective." ' Rutherford Food Corp. v. McComb, 331 US 722, 67 S Ct 1473, 1475, 91 L Ed 1772,

defining an "employer" and an "employee" in the Workmen's Compensation Act preclude us from going this far. ORS 656.005 defines "workman" as follows:

"(28) 'Workman' means any person, including a minor whether lawfully or unlawfully employed, who engages to furnish his services for a remuneration, subject to the direction and control of an employer and includes salaried, elected and appointed officials of the state, state agencies, counties, cities, school districts and other public corporations, but does not include any person whose services are performed as an inmate or ward of a state institution."

An "employer" is defined as

"(14) 'Employer' means any person, including receiver, administrator, executor or trustee, and the state, state agencies, counties, municipal corporations, school districts and other public corporations or political subdivisions, who contract to pay a remuneration for and secures the right to direct and control the services of any person."

Thus it is clear that by express provisions of the statute control is an essential ingredient in the test for determining who is a servant within the meaning of the Workmen's Compensation Act.[8] The statutes do not, however, preclude a consideration of the factors germane to the relative nature of the work test in deciding whether there was sufficient control to denominate the relationship as one of master and

----

[quoting] Walling v. Rutherford Food Corp., 10 Cir., 156 F2d 513, 516-517. The test is far from the common-law test of control, since ' "the Act concerns itself with the correction of economic evils through remedies which were unknown at common law." ' The test * * * looks at the workmen, to see whether or not their work can be characterized 'as a part of the integrated unit of production', and whether 'the work done, in its essence, follows the usual path of an employee.' * * * In applying such test, control is only one of many factors to be considered. The ultimate question is whether or not the relationship is of the type to be protected."

[8] *Cf.,* Note, 10 U of San Fran L Rev 133, 153 (1975). *But see,* 1A Larson's Workmen's Compensation Law § 43.41, discussing the influence of "the relative nature of work" test upon the weight accorded the various factors of the common law test in a particular case.

servant; in fact, to give meaning to our recognition in *Bowser* that the statute must be interpreted in light of the purposes of the Compensation Act, it is essential that we consider the factors which make up the "nature of work" test.[9]

The relationship between defendant and plaintiff in the present case is one in which defendant has the right to control over plaintiff's performance in some respects but not in others. Whether the degree of defendant's right to control in the present case is sufficient to classify the relationship of master and servant cannot be decided by turning to the factors traditionally employed for the test of control.[10] It is permissible, then, to turn to the factors relevant to the purpose of the Workmen's Compensation Act in deciding whether the control retained by defendant makes the relationship one of master and servant.[11] The application of the factors of the relative nature of the work test to the facts of the present case can be made by adopting the following excerpt from 1A Larson's Workmen's Compensation Law § 43.42:

> "* * * [I]f I regularly, year in and year out, engage an individual trucker to transport logs from my woods to my lumber mill, which is an integral part of my lumbering operation, paying him by the load, and reserving no right of control over the details of his work, it is quite possible that this man is as appropriate a subject for compensation protection as any worker that could be found. He is taking a regular and continuous part in the manufacture of my product; his work is hazardous; his rate of pay is such that he and his family cannot be expected to bear the cost of industrial accident;

---

[9] Larson shows how courts in other states purporting to be applying the control test have, in fact, injected sub silentio, the "nature of the work" test to effectuate the purposes of the Compensation Act. 1A Larson's Workmen's Compensation Law § 43.54.

[10] *See* footnote 2 *supra,* and *cf.,* 40 U Chi L Rev 661, 679 (1973).

[11] We are concerned here only with the relationship between parties where the employer is carrying on a business which is within the coverage of the Workmen's Compensation Act; we do not purport to consider the tests to be applied where one not engaged in such a business (e.g., a house owner) employs someone to perform work on his premises.

and his place in the industrial process is not such that he could distribute the risk of injury through channels of his own. In every respect he is the kind of worker for whose benefit the compensation act was thought necessary."

Larson notes that

"The hauling and loading of logs, ties, and the like have usually been classified as part of the employer's business, so as to bring within the act trucker-owners who are paid by quantity and who are free to hire their own assistants and, in some cases, to work on their own time. * * * [T]his is particularly true when the activities of the truckers must be integrated and coordinated with the employer's over-all production pattern." 1A Larson's Workmen's Compensation Law § 45.22.

■ Applying these factors here, we note that the transportation of timber formed an essential and regular part of defendant's marketing enterprise. Certain aspects of the job such as loading required close cooperation between plaintiff and employees of the defendant. Plaintiff was hired on a continuing basis and the extent of hauling and the corresponding degree of risk to him depended upon defendant's output. Moreover, defendant can more effectively distribute the cost of injuries to plaintiff resulting from the hazards of log hauling. Plaintiff must, therefore, be considered an employee for purposes of workmen's compensation. This comports with our holding in *Bowser v. State Ind. Acc. Comm., supra.*

Plaintiff contends that unlike *Bowser,* the trial court found that "plaintiff was classified as an independent contractor by P.U.C. and carried his own insurance"; that "plaintiff claims he considered himself an independent contractor and further claims, without contradiction, that defendant had previously stated to him that he was not covered by Workmen's Compensation and to get his own insurance."

■ The fact that either or both of the parties mistakenly considered their relationship to be that of employer-independent contractor cannot, of course, be

controlling in applying the definition sections of the Workmen's Compensation Act. Moreover, plaintiff neither pleaded nor proved facts sufficient to constitute an estoppel by defendant.

The judgment of the Court of Appeals is reversed.