Argued May 20, affirmed June 13, 1977

MARCUM, *Appellant,*

*v.*

STATE ACCIDENT INSURANCE FUND,
*Respondent.*

(No. L-23960, CA 7701)

565 P2d 399

Milo Pope, Milton-Freewater, argued the cause for appellant. With him on the brief were Gary Susak and Gooding & Susak, P.C., La Grande.

[ 843 ]

John W. Burgess, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Thornton, Presiding Judge, and Tanzer and Richardson, Judges.

PER CURIAM.

## PER CURIAM.

The issue in this worker's compensation appeal is whether the claimant was an employe or an independent contractor. The hearings officer ordered compensation, the Workmen's Compensation Board reversed and the circuit court affirmed the Board's determination that claimant was not an employe of the La Grande Country Club, Inc., when he sustained his injury. We agree with the analysis by the trial court and adopt it as our own:

"Claimant is fifty-three years of age and is regularly employed as a logger. By reason of the nature of his work as a logger, the claimant is laid off from his regular employment in the spring of each year. In April, 1975, he was laid off from logging and was seeking other work. Claimant had pruned trees in prior years and had the necessary equipment to engage in such activity, so he submitted a bid to the La Grande Country Club to prune dead wood from some of the trees on the golf course. Claimant had the low bid of $25.00 per tree, and this was accepted by the club. The number of trees involved was not clear from the evidence, but it appears that from 20 to 30 trees were to be pruned. Claimant was to supply his own tools and equipment. He hired an assistant to help him and agreed to pay the assistant $12.50 per tree. After five or six days on the job, claimant was injured. The Referee concluded that the claimant was an employee of the club, rather than an independent contractor. The Board, on de novo review, reversed the Referee's order and found claimant to be an independent contractor.

"The basic facts are not in dispute. Thus, the question of employee or independent contractor status is one of law. *Woody vs. Waibel,* 276 Or 189 (1976). ORS 656.005 provides that control is the essential ingredient in the test for determining who is a servant. It is right of control, rather than actual exercise of control, that is determinative. *Bowser vs. SIAC,* 182 Or 42 (1947). The principal factors showing right of control are (1) direct evidence of right or exercise of control; (2) method of payment; (3) the furnishing of equipment; and (4) the right to fire. *1A Larson's Workmen's Compensation Law,* Section 44.00.

## "EVIDENCE OF RIGHT OR EXERCISE OF CONTROL

Harry Karns was the member of the Board of Directors of the La Grande Country Club responsible for seeing that the trees were pruned and the golf course otherwise maintained. He accepted claimant's bid and showed him what needed to be done. He did not tell him how to do the work or what hours the claimant was required to maintain. Claimant was permitted to hire his own helper and determine the rate of compensation for the helper. The Referee concluded that an employer-employee relationship existed because Mr. Karns felt he could exercise control and because the club paid the hired helper directly, rather than through the claimant. However, the testimony by Mr. Karns indicates that the only control he felt he had was to direct the claimant to do a good job and to terminate the claimant if he failed to do so. Larson states that an owner, without becoming an employer, is entitled to as much control of the details of the work as is necessary to insure that he gets the end results from the contractor that he bargained for in the contract. *1A Larson's Workmen's Compensation Law*, Section 44.20. The evidence indicates that Mr. Karns was only interested in exercising enough control that he received the result bargained for.

There was insufficient evidence to establish control.

## "METHOD OF PAYMENT

"Claimant, as noted, was paid at the rate of $25 per tree. In paying the claimant and his help, the club did not withhold anything for taxes or insurance. Larson indicates that payment on a piece-work basis gives no strong indication either way of the status of employment. *1A Larson's Workmen's Compensation Law*, Section 44.33(b).

"With respect to the payment from the club to the hired helper, the evidence is that the hired helper first went to the claimant and requested payment and the claimant in turn requested the club to pay the hired helper directly. This accommodation on the part of the club does not indicate employment status.

## "FURNISHING OF EQUIPMENT

"Claimant furnished all the necessary equipment to do the job. The equipment included saws and a pickup.

This factor indicates a relationship of independent contractor. *1A Larson's Workmen's Compensation Law,* Section 44.34.

"RIGHT TO FIRE

"The right to fire, it is often said, is the power to control. *1A Larson's Workmen's Compensation Law,* Section 44.35. In this case, Mr. Karns indicated only that he felt he had the right to terminate the contract if the claimant was not properly doing his job. It is noted by Larson, 'The unqualified right to fire must be distinguished from the right to terminate the contract of an independent contractor for bona fide reasons of dissatisfaction. . . . The exercise of such a right is still consistent with the idea that a satisfactory end result is all that is aimed at by the contract.' *1A Larson's Workmen's Compensation Law,* Section 44.35.

"This Court agrees with the Board that in the application of the control test the evidence indicates that the claimant is an independent contractor. The claimant on appeal, however, now contends that the Court should consider 'the relative nature of the work' test. Claimant cites as his authority *Woody vs. Waibel, supra.* In this case, the Supreme Court quoted Larson and set forth the essential ingredients of this test to be as follows:

'* * * [T]he character of the claimant's work or business—how skilled it is, how much of a separate calling or enterprise it is, to what extent it may be expected to carry its own accident burden and so on—and its relation to the employer's business, that is, how much it is a regular part of the employer's regular work, whether it is continuous or intermittent, and whether the duration is sufficient to amount to the hiring of continuing services as distinguished from contracting for the completion of a particular job.' *Woody vs. Waibel, supra,* at page 195.

"Larson has indicated that the most difficult and controversial cases on status are those involving services, such as we have in this case. He goes on to note as follows:

'The two poles between which the area of controversy lies are these: First, it must be conceded that, in an ordinary industrial operation, the maintenance and repair of the plant are an integral part of

[ 847 ]

the business. It is just as relevant to the production process to wash the windows as it is to clean the machinery. The repair of equipment is as relevant as its operation. At the opposite extreme, it must also be conceded that every businessman cannot be held to be the direct employer of every plumber, electrician or painter that he might call in to do necessary work on the premises.' *1A Larson's Workmen's Compensation Law,* Section 45.31.

"This case can be distinguished from *Woody vs. Waibel, supra.* In the *Woody* case, the employee transported timber which formed an essential and regular part of the marketing enterprise of the employer. In this case, Mr. Karns testified that pruning trees was essential to the club, but it should be noted that Mr. Karns also testified that the pruning of trees had not been done for about 15 years. In the *Woody* case, the employee's job required close cooperation with the other employees of the employer. In this case, claimant had no working relationship with the other employees of the club. Most importantly, in the *Woody* case the employee was hired on a continuing basis. In this case, the claimant had never before worked for the club.

"Testimony from Mr. Blackman, a person who also bid on this same job, indicated that pruning trees does require some expertise. Although the claimant was a logger by profession, he testified that he regularly did odd jobs during the off season and had pruned trees for other people in the past. The claimant testified that he was expected to do the job quickly and the evidence indicates that not too much time was involved in performing the contract. The evidence, as noted, was that 20 to 30 trees were to be pruned and that claimant was to receive $25.00 per tree. He was injured after five or six days and the club paid a total of $300.00 to the claimant and his hired helper. Claimant indicated that he was entitled to an additional $50.00 from the club. If this is so, claimant must have performed about one-half to two-thirds of the entire contract in the five or six days he was working. As noted by Larson:

'Ordinarily, when the job to be done is one that becomes necessary at unpredictable intervals, and when it is not a protracted one, a specialist called in to handle the particular repair or installation is an

independent contractor. * * *" *1A Larson Workmen's Compensation Law,* Section 45.31(b).

"As stated by Larson, every business cannot be held to be the direct employer of every repairman on their premises. Mr. Blackman's testimony indicates that a person engaged in pruning trees, such as he, can be expected to carry his own workmen's compensation insurance. Under all the circumstances, this Court concludes that in applying the relative nature of the work test, the claimant is an independent contractor."

Affirmed.