Argued and submitted July 8, affirmed December 8, 1982, reconsideration denied January 21, petition for review denied February 23, 1983 (294 Or 536)

In the Matter of the Compensation of
Brenda L. Henn, Claimant.

HENN,
*Petitioner,*

*v.*

STATE ACCIDENT INSURANCE FUND
CORPORATION,
*Respondent.*

(WCB No. 80-05494, CA A24058)

654 P2d 1129

J. Michael Alexander, Salem, argued the cause for petitioner. With him on the brief was Brown, Burt, Swanson, Lathen & Alexander, Salem.

Darrell E. Bewley, Appellate Counsel, State Accident Insurance Fund Corporation, Salem, argued the cause and filed the brief for respondent.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

VAN HOOMISSEN, J.

Thornton, J., dissenting.

## VAN HOOMISSEN, J.

Claimant appeals from an order of the Workers' Compensation Board that held that her work as a magazine salesperson was as an independent contractor, not an employe. In January, 1980, she answered a classified ad in a newspaper for a job as a sales representative for the company. She went to work as an "authorized representative" of the company, selling subscriptions. She allegedly suffered tendonitis following a fall that occurred while she was making her rounds as a salesperson.

A company "Representatives' Agreement" signed by claimant provides that, as an "authorized representative" of the company, she agreed to comply with a company policy prohibiting various types of false, misleading and deceptive representations in her sales work and had to account for materials provided by the company and to fill out and properly process subscription forms. She was required to forward to the company any down payments received from subscribers. The agreement further provided that she had to abide by all applicable laws and that authorization to represent the company could be withdrawn for violation of any of the requirements of the agreement. Finally, the agreement provided:

> "I recognize that, as an independent contractor, I am self-employed, that Federal, State and local taxes are not deducted from my commissions and that I may, if I wish, engage in other remunerative endeavors without jeopardizing my authorization to represent Parents Home Service Institute, Inc."

The company considered representatives to be independent contractors. The company encouraged, but did not require, representatives to work eight hours a day. No particular hours were specified. Claimant worked for four to five hours on some days and about eight hours on other days. She was not penalized for working less than eight hours a day.

The company did not require any experience for the representative position, nor did claimant have any previous experience in sales work. The company provided a three-day training session in sales technique, given at its Portland offices. The training was designed to minimize

the possibility of representatives misinforming customers. She was taught how to present the product and was required to memorize the essential elements of a sales pitch. Representatives were encouraged to personalize their sales efforts so long as the presentations were not too lengthy.

The company agreed that, once claimant had put in 172 hours of work (the equivalent of one month of regular work in her first month), her commission would exceed $516; if not, the company would pay her the difference between $516 and the commission she actually earned. After 172 hours of work she would also be paid a mileage allowance of about $30. No other benefits were provided. Other than the one-time guaranteed minimum payment for 172 hours (which comes to $3.00 per hour) she was paid only on the basis of commissions. Representatives were allowed to draw on their commissions at any time; at the end of each month any commissions not drawn would be paid. Claimant did not work for 172 hours, so she never received the minimum payment of $516, and she never received the mileage allowance.

In order to show claimant what was to be done and how to do it, a supervisor accompanied her on her first three days of sales work. The supervisor did not actually accompany her to the homes. Instead, claimant visited certain homes while the supervisor visited other homes nearby. After the first three days she worked entirely on her own.

Claimant's job was to visit homes and to offer a simple gift (a growth chart) initially if the resident would allow her to make a sales presentation. As part of the sales presentation, she would offer the prospect a "free" copy of *Mothers' Home Encyclopedia* if the prospect agreed to subscribe to *Parents' Magazine*. The encyclopedia and the magazine were the only publications offered by the company. If the prospect agreed to subscribe, she presented the encyclopedia, had the prospect sign a completed subscription contract and collected a down payment. As part of the sales effort, she showed the prospect a notebook filled with pages taken from previous issues of the magazine. The company provided the gift growth charts, encyclopedias and subscription contract forms. At the suggestion of the

company, she displayed the sample magazine pages supplied by the company in a photo album supplied by her.

From time to time an area representative visited claimant to replenish her supplies. The area representative also occasionally provided her with leads to potential customers, consisting of lists of previous subscribers to *Parents' Magazine.* Claimant was supposed to telephone a person at the company offices every day in order to report her sales results. She called in on most days but failed to do so on some days. Consistent with the authorization agreement, representatives were allowed to engage in other work and could represent other companies during their sales rounds. Some did so, but claimant did not choose to. The company preferred that she work around her home area and advertised "work in your area" as an aspect of the job. However, she was allowed to sell wherever she wished and to whomever she wished. She chose to work in her home area, consisting of McMinnville and several nearby towns. She was the only person covering the McMinnville area. She used her own automobile in her representative work.

By the express provisions of the Oregon Workers' Compensation Act,[1] the right to direct and control the services of a person is an essential ingredient in the test for determining who is an employer within the meaning of the Act. *Woody v. Waibel,* 276 Or 189, 196, 554 P2d 492 (1976). The principal factors showing right of control are: (1) direct evidence of the right to or the exercise of control; (2) the method of payment; (3) the furnishing of equipment; and (4) the right to fire. *Marcum v. SAIF,* 29 Or App 843, 845, 565 P2d 399 (1977); 1C Larson, Workmen's Compensation Law §44.00.

Direct evidence of control is slight. Although the employer preferred that claimant work eight hours and phone in receipts every day, she was not required to do so and often did not. Further, she was free to use her own

---

[1] ORS 656.005(14), (28) define "employer" and "worker":

"(14) 'Employer' means any person * * * who contracts to pay a remuneration for and secures the right to direct and control the services of any person."

"(28) 'Worker' means any person * * * who engages to furnish services for a remuneration, subject to the direction and control of an employer * * *."

sales technique as long as her representations were not "false, misleading, or deceptive" and did not otherwise violate the law. She also had discretion in choosing the sales area she covered and the customers she solicited. Further evidence on the parties' relationship is found in their agreement, which provided that she was a self-employed independent contractor and that taxes were not to be deducted from her commissions. While the fact that either or both of the parties considered their relationship to be that of independent contractor is not controlling, *Woody v. Waibel, supra,* a plain statement that the parties intend the relationship of independent contractor and not employe is not always to be disregarded. In a close case, it may swing the balance. 1C Larson, Workmen's Compensation Law § 46.30.

Claimant was being paid on commission.[2] When payment is by quantity or percentage, the method of payment test largely becomes neutral. To the extent that it indicates continuing service, it suggests employment; to the extent that it lessens an employer's interest in the details of how the employe spends her time, it has been said to suggest an independent contractor relationship. 1C Larson, Workmen's Compensation Law § 44.33(b). It has generally been held that a commission salesman who works on a part-time basis, selling only when he feels like it or when the opportunity presents itself, is an independent contractor. 1C Larson, Workmen's Compensation Law § 45.23.

Claimant furnished her own car and the notebook in which she displayed the sample magazine stories. The free gifts and the contract forms were supplied by the employer. This factor is not particularly helpful in this situation.

The agreement signed by claimant when she was hired indicated that her "authorization to represent is subject to withdrawal as a consequence of a violation" of its various provisions prohibiting false or misleading representations and failure to return materials and proceeds. An

---

[2] Had claimant worked 172 hours before she was injured, she would have received a guaranteed return of $516, if her commissions did not exceed that. The dissent relies, in part, on this method of payment in concluding an employer-employe relationship exists. However, at the time of her alleged injury, she was not yet entitled to the benefit of a guaranteed wage.

unqualified right to fire, indicative of an employer-employe relationship, must be distinguished from the right to terminate the contract of an independent contractor for bona fide reasons of dissatisfaction. The exercise of such a right is still consistent with the idea that a satisfactory end result is all that is aimed for by the contract. *Marcum v. SAIF, supra,* 29 Or App at 847; 1C Larson, Workmen's Compensation Law § 44.35. No evidence was offered here that the employer could discharge claimant for other than violations of their agreement.

On *de novo* review, we conclude that claimant was an independent contractor. Indeed, the facts are remarkably similar to a New York case in which, according to Larson, "every fact relating to control was overwhelmingly on the side of independent contractorship":

> "[The claimant] 'was [to be] free to exercise her own discretion and judgment with respect to the persons from which she would solicit applications and with respect to the time, place and manner of solicitation'; her payment was by commission, not by time; she paid her own expenses and used her own car; she was not required to make any report of her activities or to attend any meetings, although meetings were held which she could attend if she wished; she had no office space: the company, after her initial training period, did not in fact exercise any control over her work, beyond limiting her to a certain territory and forbidding her to sell competing insurance; and, for good measure, the written contract said explicitly that she should not be an employee but an independent contractor. * * *" 1C Larson, Workmen's Compensation Law § 43.54, citing *Gordon v. New York Life Ins. Co.,* 275 App Div 135, 89 NYS2d 83 (1949), *rev'd* 300 NY 652, 90 NE2d 898 (1950).

Claimant asserts that under the "relative nature of the work" test her work was so intricately involved with the business of the employer as to make her an employe. Although this test is recognized in Oregon, it is used only if the relationship betwen employer and employe cannot be sufficiently ascertained by use of the traditional control test. *Woody v. Waibel, supra,* at 197. Application of the control test convinces us that the Board's decision was correct.

Affirmed.

**THORNTON, J.,** dissenting.

From my review of this record and the authorities cited by both sides, I am convinced that claimant was an employe of Parents Home Service Institute, Inc., and as such was covered under the Oregon Workers' Compensation Act. ORS 656.005(28); *Woody v. Waibel,* 276 Or 189, 554 P2d 692 (1976). I base this conclusion on the following.

*First, the amount of control the employer was authorized to exercise over claimant's work.* Although the agreement between the parties indicated that claimant was an independent contractor, the record discloses significant direct evidence of control. The employe was specifically trained by the company and was given a prepared sales pitch to assist in making sales. She was directed to make daily reports to her employer and actually did so at least every other day. In addition, although the employes were not required to work specific hours, the job was advertised as full-time, and it is apparent that such an effort was expected. An employe such as claimant might have been able to work at other jobs, but that right was really nothing more than the opportunity of almost anyone in the work force to "moonlight."

*Second, the method of payment.* Although the method of payment was couched in terms of commissions rather than a set wage during the initial period of employment, the employer's sales representatives were being paid a specific salary. The income of $516 for the first 172 hours ($3 per hour) was guaranteed regardless of sales and is in reality an established salary.

*Third, the furnishing of equipment.* The employer provided all the materials and supplies necessary to solicit orders.

*Fourth, the right to fire.* The employer definitely had the right to fire claimant if she violated any of the terms of the agreement. This proviso definitely is not consistent with an independent contractor status.

*Fifth, the relative nature of the work.* As in *Woody v. Waibel, supra,* the employe's sales solicitations formed an essential and regular part of the employer's marketing

enterprise. Certain aspects of the job required close cooperation between claimant and her employer. Claimant certainly did not hold herself out to the public or other perspective employers as performing an independent business service.

> "If the worker does not hold himself out to the public as performing an independent business service, and regularly devotes all or most of his independent time to the particular employer, he is probably an employee, regardless of other factors." 1B Larson, Workmen's Compensation Law, § 45.31(a) at 8.109.

The above conclusion that the claimant was an employe for purposes of the Workers' Compensation law is supported by an analogous line of cases involving similar claims of independent contractor status for purposes of the unemployment compensation law. *See, e.g., Journal Pub. Co. v. State U. C. Com.,* 175 Or 627, 155 P2d 570 (1945), where the court denied the Journal's assertion that newspaper carriers were independent contractors for purposes of the unemployment compensation laws. To the same effect, *see Revlon Services, Inc. v. Emp. Div.,* 30 Or App 729, 567 P2d 1072 (1977); *Mt. Jefferson Carpets v. Emp. Div.,* 25 Or App 375, 548 P2d 1354 (1976); *Greater Port. Newcomers v. Morgan,* 14 Or App 333, 513 P2d 493 (1973); *but see Pam's Carpet Service, Inc. v. Employment Div.,* 46 Or App 675, 613 P2d 52 (1980). Although the above cases involved a different statute, as well as slightly different language in the relevant definition section, the fundamental principle is identical.