**Patricia E. McGIVNEY**

v.

**MAINE EMPLOYMENT SECURITY COMMISSION.**

Supreme Judicial Court of Maine.

Argued May 2, 1980.

Decided Oct. 1, 1980.

McTeague, Higbee & Tierney, James E. Tierney, Charles R. Priest (orally), Brunswick, for plaintiff.

Susan P. Herman (orally), Patricia McDonough, Asst. Attys. Gen., Augusta, for defendant.

Before WERNICK, GODFREY, NICHOLS, GLASSMAN and ROBERTS, JJ.

WERNICK, Justice.

Under the Maine Employment Security Law a claimant is disqualified for benefits "[f]or the week in which he left his regular employment voluntarily without good cause attributable to such employment, . . . and disqualification shall continue until claimant has earned 4 times his weekly benefit amount; . . . ."

The statute further provides for a so–called "follow the spouse" exception, that it shall not

"be considered voluntary without good cause if the leaving was necessary for the claimant to accompany, follow or join his spouse in a new place of residence and he can clearly show upon arrival at the new place of residence an attachment to the new labor market and is in all respects able, available and actively seeking suitable work; . . . ." 26 M.R.S.A. § 1193(1)(A) (Supp. 1978).

Now before us is the appeal of the Maine Employment Security Commission (the "Commission") from a judgment of the Superior Court (Kennebec County) interpreting differently from the Commission the "follow the spouse" exception to disqualification.

The Commission had decided that the claimant Patricia E. McGivney, was married after the last day she worked in her regular employment and therefore she was not within the "follow the spouse" exception [1] to the statutorily imposed disqualification for having "left . . . regular employment voluntarily without good cause attributable to such employment." The Superior Court, however, took the position that since it was undisputed as fact that the claimant had received vacation pay for a two–week period following her last day at work, during which period she had married and moved to Florida with her husband, claimant was married before her employment relationship had terminated and therefore was not pre-cluded, by the time of her marriage, from having the protection of the "follow the spouse" exception.

We agree with the Superior Court's approach. We therefore deny the Commission's appeal and affirm the judgment of the Superior Court.

Claimant was employed by a grocery store in Lisbon Falls from April 1973 to August 1975, and subsequently from June 1976 to February 1978. She ceased to perform work at the store on February 10, 1978, in order to marry and move to Florida with her husband who had been transferred there in connection with his service in the Navy. However, claimant received vacation pay for the two weeks immediately following February 10, 1978. The store, it would appear, kept her name on the payroll for those two weeks (until February 24, 1978) and issued regular paychecks for each of the two weeks.

On February 15, 1978 plaintiff was married. On February 18, 1978 she and her husband moved to Florida. Plaintiff had procured a marriage license on February 10, 1978, the same day that she had stopped performing work at the store. After a brief vacation, plaintiff and her husband settled in Jacksonville, where, on March 17, 1978, she applied for unemployment benefits.

Within the reviewing hierarchy of the Commission the following decisions were made.

---

1. The "follow the spouse" exception was added to Section 1193(1)(A) by P.L.1977, c. 472 § 2 after this Court's decision in *Carter v. Maine Employment Security Commission*, Me., 356 A.2d 731 (1976). In *Carter* we held that the fact alone that the legislature in 1972 repealed an earlier version of Section 1193(1) *specifically disqualifying* one who left employment to join a spouse failed to establish affirmatively that such a leaving of employment was "attributable to . . . [the] employment", within the meaning of Section 1193(1), whatever might be the view as to the impact of such a following of *the spouse on the question* whether the leaving of employment was, or was not, "voluntary" or "without good cause." Hence, we concluded in *Carter*, which involved a claimant who had quit her job to join her husband in a new location, that unemployment benefits were unavailable to the claimant. We may note, however, that the language of the "follow the spouse" exception now in Section 1193(1)(A) makes no express separate reference to the "attributable to . . . [the] employment" criterion stressed in *Carter*; rather, it is absorbed into the "voluntarily without good cause" concept.

Section 1193(1)(A) has been further amended by P.L.1979, c. 515 § 15, which added the phrase "within 7 days" after the language "can clearly show;" and also P.L. 1979, c. 428 § 1, which inserted "in employment by an employer" after the words "weekly benefit amount." These recent amendments have no bearing on the case at bar.

A Deputy denied claimant's application on the basis of a finding that she "voluntarily left her regular employment on 2/10/78 to move to Florida to be with her boyfriend ..." and therefore "left her regular employment voluntarily on 2/10/78 without good cause attributable to her employment." Accordingly, the Deputy ruled that claimant was disqualified for benefits from February 10, 1978 until such time that she earned $316.00. The Deputy's decision further held that the experience rating record of the employer would not be charged with benefits for ensuing unemployment since claimant's separation was voluntary without good cause attributable to such employer, within the meaning of 26 M.R.S.A. § 1221(3).

Claimant appealed the Deputy's decision to the Commission's Appeal Tribunal. Pursuant to this appeal, a hearing was held in Florida at which claimant gave testimony concerning her claim. The Maine employer was notified of a hearing to be held in Augusta but did not appear. The Appeal Tribunal affirmed the Deputy's decision, specifically on the ground that since the plaintiff was unmarried at the time she ceased working on February 10, 1978, she did not qualify for benefits by virtue of the "follow the spouse" exception of Section 1193(1)(A). The Commission later affirmed this decision of the Appeal Tribunal.

Claimant appealed the Commission's decision to the Superior Court which, as already explained, decided that since plaintiff had received vacation pay for the two weeks following her separation from work on February 10, 1978, it was not until February 24, 1978 that she terminated employment, within the meaning of Section 1193(1)(A). For this reason, the Superior Court concluded that plaintiff had married and moved with her husband prior to the termination of her employment and therefore the time of her marriage did not preclude her from the protection of the "follow the spouse" provision in Section 1193(1)(A). The Superior Court remanded the case to the Commission for further findings, requisite under Section 1193(1)(A), regarding whether upon arriving at the new place of residence, claimant had attached to the new labor market and was able, available and actively seeking suitable work.

In its appeal to this Court the Commission contends that the Superior Court's interpretation of the statute must be rejected because the precise words used in the "follow the spouse" exception are "leaving work", and the plain meaning of "leaving work" is ceasing to perform services.

We reject the Commission's position. Viewing Section 1193 in its entirety, we conclude, as did the Superior Court, that the term "leaving work" cannot be given a special meaning different from the basic concept of employment termination which infuses the statute as a whole, more particularly in light of the foundational purpose of the statute to provide compensation for "unemployment."

In defining a general category of disqualification for benefits and several exemptions therefrom, Section 1193 uses varying language to describe what is fairly to be regarded as the central event at issue: the termination of employment. For example, the following language is used at different points to refer to this concept: "left ... regular employment;" "left employment;" "separated from ... employment;" "leaving work;" and "duration of ... unemployment." What thus emerges from Section 1193 as a whole is a focus upon the fundamental employment relationship, regardless of how it may be particularly described.

Further to guide us in determining the scope of that employment relationship, as it is relevant to the particular circumstances before us in this appeal, we turn to other pertinent portions of the Employment Security Law.

Total "unemployment" is defined in 26 M.R.S.A. § 1043(17) as follows:

"An individual ... shall be deemed 'totally unemployed' in any week with respect to which no wages are payable to him and during which he performs no services, except that remuneration pay-

able or received as holiday pay[2] shall not be deemed wages for the purpose of this subsection . . . ." 26 M.R.S.A. § 1043(17) (Supp. 1979–80).

"Wages," as referred to in the above definition of unemployment, are defined as

"all remuneration for personal services, including commissions, bonuses, gratuities and the cash value of all remuneration in any medium other than cash." 26 M.R.S.A. § 1043(19) (Supp. 1979–80).

Lastly, Section 1193(5)(A) provides:

"An individual shall be disqualified for benefits:

" . . .

"5. For any week with respect to which he is receiving, is entitled to receive, or has received remuneration in the form of:

"A. Dismissal wages or wages in lieu of notice or terminal pay *or vacation pay* . . . ." 26 M.R.S.A. § 1193(5)(A) (1974).

In light of the above provisions, taken in conjunction with the language and purpose of the statute in its entirety, we conclude that the employment relationship is not yet fully terminated in circumstances where the employee receives vacation pay for a specified period, even when that period follows the employee's last day of working on the job. *See, e. g., Consiglio v. Administrator, Unemployment Compensation Act*, 137 Conn. 693, 81 A.2d 351 (1951); *Reid v. Board of Review, Bureau of Unemployment Compensation of Ohio*, 155 Ohio St. 6, 97 N.E.2d 31 (1951); *Blitz v. Corsi*, 275 App.Div. 1015, 91 N.Y.S.2d 770, *aff'd without opinion* 302 N.Y. 573, 96 N.E.2d 889 (1951). *See also Gollender v. Morgan*, 17 Or.App. 104, 520 P.2d 453, 456 (1974).

Hence, where, as here, plaintiff's marriage, as well as her leaving the state in company with her spouse, occurred *prior* to the full termination of the employment relation, the plaintiff's claim that she had the benefit of the "accompany, follow or join [the] spouse" exception cannot be held de-

feated on the ground alone that these events took place after plaintiff would no longer be performing any actual work in the employment. We deem the Commission's approach in this regard particularly unwarranted in light of not only the special facts involved in the legislature's amendment of Section 1193(1)(A) to create the "follow the spouse" exception to disqualification, *see* n.1, *supra*, but also the general principle that the Maine Employment Security Law should be liberally construed to achieve the legislative objectives manifested in it. *See Toothaker v. Maine Employment Security Commission*, Me., 217 A.2d 203 (1966).

The entry shall be:

Appeal denied; judgment of the Superior Court affirmed.

All concurring.

---

**2.** We have recognized that "holiday pay" is distinct from "vacation pay." *See G.H. Bass and Co. v. Maine Employment Security Com-*

*mission*, Me., 250 A.2d 492 (1969). Hence, the exclusion of "holiday pay" as "wages" does not exclude "vacation pay" as "wages."