Argued and submitted August 25, reversed and remanded with
instructions September 29, reconsideration denied November 10,
petition for review denied November 30, 1982 (294 Or 149)

In the Matter of the Compensation
of Guy Fincham, Claimant.

FINCHAM,
*Petitioner,*

*v.*

WENDT,
*Respondent.*

(No. 81-04246, CA A24269)

651 P2d 159

Steven R. Huff, Salem, argued the cause for petitioner.
With him on the brief was Karol Wyatt Kersh & Associates, P.C., Salem.

Dennis Graves, Salem, argued the cause and filed the
brief for respondent.

Before Buttler, Presiding Judge, Joseph Chief Judge, and
Warren, Judge.

JOSEPH, C. J.

## JOSEPH, C. J.

The sole issue in this case is whether a worker engaged in remodeling a cold storage room in a building located on a "hobby farm" is subject to workers' compensation coverage. Claimant seeks judicial review of a determination by the Workers' Compensation Board that he is a nonsubject worker under the householder exemption. ORS 656.027 provides in relevant part:

"All workers are subject to ORS 656.001 to 656.794 except those nonsubject workers described in the following subsections:

"* * * * *

"(2) A worker employed to do gardening, maintenance, repair, remodeling or similar work in or about the private home of the person employing the worker."

Employer lives on a 25-acre farm, where he grows peaches, pears, apples, cherries, grapes and berries. He occasionally has hired teenagers to help pick the fruit. Some of the crop is sold to commercial outlets; the rest is sold from a self-service fruit stand. Gross sales in 1980 were about $8,000. Although it has shown a profit at times in the past, the farm is not generally a profitable activity. Employer has regular full-time employment elsewhere; he regards the farming as a hobby that enhances the family's enjoyment of the property as their home.

In September, 1980, employer hired claimant, a 17-year old high school student, to pick fruit for two days. On October 18, 1980, employer hired claimant again, this time to expand a cold storage room in a building located 65 feet from employer's residence. The building houses farm machinery, tractors, tools and a mechnical repair shop, as well as other cold rooms for storing peaches and apples intended for sale. Claimant worked on the project after school for about two weeks. On November 2, 1980, he injured his head in a fall from a ladder while · he was engaged in the work.

The referee found that claimant was not an independent contractor; the employer does not contend otherwise. The only issue before us is the applicability of the quoted householder exemption; thus, if the exemption is inapplicable, claimant is a subject worker under ORS

656.027. The Board, in reaching its conclusion that the exemption was applicable, reasoned:

> "As noted, we have found that the employer was not really engaged in farming as a business, but as a hobby, and that the claimant was not hired as a general farm laborer. That being the case, we find that the employer is not a subject non-complying employer, as did the Referee, due to the exception contained in ORS 656.027(2)."

Employer contends that this case is disposed of by a mechanical reading of the statutory language "in or about the private home." By his reading, the construction work was "about" the home for no other reason than that the building was in the vicinity of the home. We agree that the statutory language can be construed to include outbuildings. Remodeling done not "in" but "about" a private home might well include renovation of an outbuilding, such as an attached or detached garage housing the family car. Under the interpretation urged by employer, however, remodeling of a commercial machine shop that happened to be located adjacent to the private home of the machine shop owner could be considered to be in the vicinity of and, hence, "about" the private home, and the employment would thus fall within the exemption. That result is clearly wrong. A mechanical reading of the statute must therefore fail.

The dispositive concept in this statutory provision is the term "private," which must be distinguished from the concept of business or commercial premises. The basis of the householder exemption is the character of the home as a private place, not as business premises. Outbuildings are included in the exemption only because they are extensions of the home and, as such, share the same character as the home. In order for work done on outbuildings to fall within the exemption, the outbuildings must be of a private character rather than business or commercial.

The record shows that the building in question here was used to store tractors, tools, farm equipment and fruit intended for sale. It was evidently not used to house personal automobiles of the employer.[1] Certainly, the cold

---

[1] The employer's testimony suggests that the vehicles in the "garage" were farm tractors:

storage room that claimant was building was directly related to the fruit sales. We conclude that the construction claimant was engaged in was not work on an extension of the private home but rather on the premises of a farm operation.

The Board and employer have taken the position that the fruit selling operation was not "really" a business, because it was not the primary source of income of the employer. We rejected a similar contention in *Carlile v. Greeninger,* 35 Or App 51, 580 P2d 588, *rev den* 283 Or 235 (1978), where the issue was whether the employe was an independent contractor or servant. There, the primary business of the employer was rock crushing, but he was also trying to start a cordwood business. We said:

"Defendant argues that cordwood cutting is not a regular part of his business, which was rock crushing, and that

"Q. * * * What building was it that the remodeling work was to be done in?

"A. It was the garage — existing garage — that's been there since 1943.

"Q. And what did you use that building for?

"A. Well, it's a shop and garage and cars.

"Q. Did you park your vehicles in it?

"A. Tractors.

"Q. And when you say shop —

"A. One part of it.

"Q. Did you have mechanical parts — excuse me — mechanical tools and things like that in the building?

"A. Yes.

"* * * * *

"Q. Do you keep all of your farm equipment and tractors in this garage?

"A. Yes.

"Q. Do you also do your work on them in there?

"A. Some of them, yes.

"Q. Do you keep the tools that you work for picking the fruit in this building?

"A. Yes.

"Q. Do you keep or store the fruit in any other location, besides the cold storage rooms in this building?

"A. No."

the claimant's job was merely temporary with no prospect for continued employment. Defendant is essentially arguing that under the 'relative nature of the work' test put forth in *Woody v. Waibel,* 276 Or 189, 554 P2d 492 (1976), claimant does not qualify as an employe. [Footnote omitted.]

"While it may be that woodcutting was not defendant's primary business, it was a business of his, and the falling and bucking of trees was an essential part of that enterprise. Further, there was a prospect of continued employment although it was contingent upon defendant's ability to acquire more timber." 35 Or App at 54-55.

While selling fruit grown on his small farm may not have been the employer's primary business, we conclude, as in *Carlile,* that it was nonetheless a business or commercial activity.

Similarly, we reject the argument that a business effort must show a profit in order to constitute a business. As stated by Larson:

"On one point a fair degree of unanimity seems to have emerged. In the absence of a 'pecuniary-gain' requirement, the concept of trade or business does not necessary [sic] embrace the element of profit-seeking. It is true that the word 'profit' turns up here and there in general definitions of 'business' as distinguished from nonbusiness activities, but when the showdown comes, the court may explain that this was not really an essential part of the definition. For example, although Washington had held that the Red Cross was not covered because it was not in business for profit, it managed to hold later that a cafeteria run on a nonprofit basis by a corporative Naval Supply Depot was indeed a business.

"This is a sound result. The test is not whether the employer is in business for profit, but whether he is in business at all. If he supplies a product or service, it is immaterial what he does with his profits, or whether he expects or gets any profits at all." I Larson, Workers' Compensation Law, § 50.44(9) (1980). (Footnotes omitted.)

We concur with this view. The record here indicates that the employer's fruit selling business was sometimes profitable, sometimes not. Workers' compensation coverage does not depend on the profit and loss statements of the employer.

The Supreme Court has held that statutes governing workers' compensation are to be interpreted to effectuate the purposes of the law. *Woody v. Waibel,* 276 Or 189, 197, 554 P2d 492 (1976). In *Woody,* the two chief purposes of workers' compensation law were recognized to be to further a social bargain (giving up the right to litigation for that of limited compensation) and as social insurance (allocation of financial risk to the ultimate consumer). The court quoted from a law review article explaining the social insurance purpose:

> " 'The second principal social policy purpose was the social insurance form through which workmen's compensation was to operate. [Note omitted.] This would be its risk distribution aspect. The fact that modern industrial life will inevitably generate work-related injuries and possibly death is one of the major premises underlying workmen's compensation. * * * Therefore, the cost of these injuries and fatalities is to be distributed throughout society and viewed as a cost of doing business.' Note, *Employer or Independent Contractor: The Need For a Reassessment of the Standard Used Under California's Workmen's Compensation,* 10 U San Fran L Rev 133, 136-37 (1975)." 276 Or at 194 n 6.

Larson directly relates the purpose of the householder exemption to the social insurance purpose of workers' compensation law:

> "It has always been assumed, rightly or wrongly, that the cost of compensation protection did not become a burden upon the employer directly, since he was expected to pass the cost along to the consumer in the price of the product. There are those who argue that this does not go to the essence of the compensation idea, and perhaps does not really work out at all; but the fact remains that for decades the compensation principle has been made acceptable to employers (and, to some extent, also to skeptical courts) on the argument that the cost could be passed along through the medium of insurance whose premiums are reflected in the cost accounts on which the price is based. Whether or not Lloyd George ever really said that 'the cost of the product should bear the blood of the working man,' it was in the setting provided by this idea that the principle became established of the business employer's unilateral noncontributory liability without fault toward anyone who might retroactively be determined by a court to have a claim upon him for compensation.

"When a similar liability is imposed upon the householder, however, who produces and sells no goods or services that can bear the cost of compensation insurance, the law has gone one step further and said that any employer, solely because he stands in the employment relation to an employee, is liable without fault for the latter's injuries and must assume and absorb the entire ultimate cost himself.

"\* \* \* \* \*

"\* \* \* [S]imply to impose workmen's compensation liability on householders, whether by judicial decision or by statutory extension, would mean, first, that the employer would bear all the cost of protection in this category of wage-loss, and, second, that he could never be quite sure in advance whether he needed compensation insurance and what his potential future liability might be. No closer questions can be found in the entire shadowy realm of employee status than the very questions that would face the householder many times every year: the status of directly hired window washers, repairmen, snow shovelers, grass mowers, baby-sitters, and all the army of artisans whose visits are a normal and frequent incident in the life of a house owner. No one would dare to let a handyman climb to his precarious perch on a stepladder and remove a storm window without first taking out compensation insurance for the day." I Larson, Workers' Compensation Law, § 50.25 (1980).

In this case, we draw the line between subject and nonsubject worker status, not on the basis of the physical proximity of the worker's employment to the private home of the employer, but rather in light of the fundamental purposes of workers' compensation law. In the context of this case, the employer was a producer, rather than a consumer like the ordinary householder. The fruit selling operation is within the stream of commerce, whether or not employer was always able to make the business a financial success. Claimant was not engaged in construction on an extension of the private home, but rather on the premises of and in connection with a business. Hence, the remodeling was not "about the private home" within the meaning of ORS 656.027(2), and claimant was a subject worker.[2]

---

[2] In *Anfilofieff v. SAIF*, 52 Or App 127, 132, 627 P2d 1274 (1981), we interpreted the phrase "employed to do \* \* \* work" in the householder exemption,

Reversed and remanded with instructions that the claim be accepted as compensable.

---

ORS 656.027(2), to signify the overall nature of the employe's duties rather than the specific task. We held that repair of a bath house on the premises of the employer's private residence was work incidental to the overall nature of the claimant's employment as a carpenter on a housing project and, hence, that the claimant was not *employed* to repair or remodel the bath house. That case is inapplicable to this one, for claimant here had no other regular employment relationship with the employer.