Argued and submitted May 29, reversed and remanded December 26, 2007

In the Matter of the Compensation of
Martin L. Madsen, Claimant.

Tom SORENSON,
*Petitioner,*

*v.*

Ronald C. LaTOUR,
Martin L. Madsen
and Department of Consumer and Business Services,
*Respondents.*

Workers Compensation Board
01-09496, 01-09230, 01-01622
A131026

176 P3d 395

Timothy C. Gerking argued the cause for petitioner. With him on the briefs were Thaddeus G. Pauck and Brophy Mills Schmor Gerking Brophy & Paradis, LLP.

H. Scott Plouse and Hornecker, Cowling, Hassen & Heysell, L.L.P., filed the brief for respondent Ronald C. LaTour.

Robert F. Webber, Arthur W. Stevens III, and Black, Chapman, Webber, Stevens, Petersen & Lundblade filed the brief for respondent Martin L. Madsen.

Richard Wasserman, Attorney-in-Charge, Civil/Administrative Appeals Unit, waived appearance for respondent Department of Consumer and Business Services.

Before Wollheim, Presiding Judge, and Rosenblum and Sercombe, Judges.

SERCOMBE, J.

**SERCOMBE, J.**

Petitioner Sorenson seeks review of a final order of the Workers' Compensation Board (board). The order classified Sorenson as a "statutory employer" under ORS 656.029(1) and, therefore, accountable for workers' compensation benefits for a worker injured during the construction of a house on Sorenson's farm. ORS 656.029(1) creates that type of accountability when a person contracts for "the performance of labor where such labor is a normal and customary part or process of the person's trade or business" and the contractor for that work fails to obtain workers' compensation coverage for subject employees of the contractor. The board applied ORS 656.029(1) and found that the construction of the house was a normal and customary part of Sorenson's trade or business of improving the value of his farm. We review the board's findings to assess whether the findings are supported by substantial evidence in the whole record. ORS 656.298(7); ORS 183.482(8)(c). We reverse because critical factual findings of the board are not supported by substantial evidence.

The following facts are consistent with the unchallenged findings of the board. Sorenson obtains most of his income from his horse training and stabling, farming, and ranching businesses. He uses a 55-acre parcel of land in Jackson County for growing hay and boarding and training horses. To further those uses, Sorenson built a barn, riding arena, and two pump houses on the property.

The property is zoned for exclusive farm use. The zoning allowed residential structures on the land only if construction of the residence began by 1996. Sorenson started to build a house at that time with assistance from his friends. He obtained a building permit from the county, listing himself on the permit application as the project contractor because he was unable to afford to hire a licensed contractor to supervise the construction.

The project proceeded slowly, due to limited funds. Sorenson occasionally hired skilled laborers to perform specialized tasks of plumbing, wiring, framing, and pouring a foundation. In the spring of 2000, Sorenson hired respondent

Ronald C. LaTour to install rock siding on the house. LaTour agreed to perform the installation for a flat price, with Sorenson providing the materials for the job. LaTour hired respondent Martin L. Madsen (claimant) to assist with the work. LaTour paid claimant on a daily basis, set the days and hours of work, and supervised and directed the work. Sorenson had no role in claimant's employment and retained no authority to direct LaTour in the employment of others.

Claimant fell from scaffolding and injured himself while working on the house. He filed a workers' compensation claim against LaTour for his injuries. The Workers' Compensation Division (division) found LaTour to be a noncomplying employer. Under ORS 656.005(18), a "noncomplying employer" is an employer who fails to provide workers' compensation insurance benefits for its workers as required by ORS 656.017. Claimant also filed a workers' compensation claim against Sorenson. The division concluded that Sorenson did not employ claimant. The division also accepted claimant's claim against LaTour, notwithstanding LaTour's objections. All three actions by the division were appealed to the board and consolidated for a hearing by an administrative law judge (ALJ).

After a hearing, the ALJ determined that LaTour was a noncomplying employer of claimant and that Sorenson did not employ claimant. Alternatively, the ALJ concluded that, if Sorenson employed claimant, then claimant was not a subject worker under ORS 656.027(2), because he fell under an exemption for workers employed to do work in or about an existing private home. The ALJ decided that Sorenson was not liable to claimant as a statutory employer under ORS 656.029. Finally, the ALJ dismissed as untimely LaTour's objections to the acceptance of the claims. All parties appealed the ALJ's order to the board.

On review, the board agreed that LaTour was a noncomplying employer, reversed the determination that claimant was not a subject worker by virtue of ORS 656.027(2), and concluded that Sorenson was a statutory employer under ORS 656.029(1). The board also reinstated LaTour's objection to the acceptance of the claim. Only Sorenson sought review of the board's order in this court. Sorenson's sole

assignment of error challenges the board's determination that he was a statutory employer pursuant to ORS 656.029(1).

ORS 656.029(1) provides, in part:

"If a person awards a contract involving the performance of labor where such labor is a *normal and customary part or process of the person's trade or business*, the person awarding the contract is responsible for providing workers' compensation insurance coverage for all individuals, other than those exempt under ORS 656.027, who perform labor under the contract unless the person to whom the contact is awarded provides such coverage for those individuals before labor under the contract commences."

(Emphasis added.) That statute was adopted by the legislature in 1979. Or Laws 1979, ch 864, § 2.

Following the adoption of ORS 656.029(1), the director of the then Workers' Compensation Department adopted a rule interpreting its terms. Currently codified at OAR 436-050-0040(4)(c), the rule defines the term "normal and customary part or process of the person's trade or business" in ORS 656.029(1) to refer to "the day-to-day activities or operations which are necessary to successfully carry out the business or trade." The rule guides the board in the implementation of ORS 656.029(1). Indeed, in *Clausing v. K-Mart Corporation*, 144 Or App 552, 926 P2d 337 (1996), this court remanded a board determination under ORS 656.029(1) for failing to consider and apply OAR 436-050-0040(4)(c).

■ Thus, as interpreted under the rule, ORS 656.029(1) makes a person a statutory employer when a person engages a contractor to perform labor that is both part of the regular "day-to-day activities or operations" of the person's "trade or business" and "necessary to successfully carry out the business or trade." The board applied those tests to classify Sorenson as a statutory employer, reasoning as follows:

"[W]e do not view Sorenson's trade or business as narrowly confined to horse training or farming. The residence that Sorenson was constructing was built to increase the value of the farm for the possibility of future sale. Thus, like the construction of structures such as a barn and riding arena, the home-building project enhanced the value of the farm

business. Accordingly, we conclude that enhancing the value of commercial property was part of Sorenson's trade or business. In addition, Sorenson was saving money on the house-building project by not hiring a general contractor. Under these particular circumstances, we conclude that this project was included within Sorenson's trade or business.

"Having clarified Sorenson's trade or business, we now determine whether [claimant's] labor was a normal or customary part of that trade or business. In other words, we must determine whether that labor was a day-to-day activity or operation necessary to successfully carry out Sorenson's horse training/general contractor business. After reviewing this record, we are persuaded that the masonry services that LaTour and [Madsen] provided were a part of operations necessary to carry out the general contractor portion of Sorenson's trade or business. Applying stone siding is a normal and customary part of the construction for which Sorenson was a general contractor and is similar to the work performed by other tradesman Sorenson employed in construction of the private residence, such as farmers, plumbers, and electricians. Accordingly, we conclude that Sorenson was the responsible employer under ORS 656.029(1)."

On review, Sorenson contends that there is no substantial evidence in the record to support the board's conclusions on the nature of his "trade or business" and whether claimant's labor was part of the normal, "day-to-day" activities that are "necessary" to the success of that trade or business. We agree.[1] We reverse because the board's order lacks that evidentiary support.

The board erred in classifying Sorenson's "trade or business" as anything more than the farming and horse training occupations in which he is engaged. The board concluded that Sorenson is in a different trade or business—the business of being a "general contractor" for the purpose of "enhancing the value of commercial property"—because the construction of his personal residence increases the value of

---

[1] Under ORS 183.482(8)(c), we are empowered to set aside or remand the board's order if the "order is not supported by substantial evidence in the record. Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding."

the farm property. Whether that classification is correct depends on whether Sorenson's homebuilding activities are unrelated to his farming business and constitute a different "trade or business." We conclude that the homebuilding work is either related to Sorenson's farming and horse training businesses (by increasing the value of the farm property) or unrelated to that enterprise but personal, and not commercial, in nature. In either event, the homebuilding activity does not qualify Sorenson as being in the business of a commercial construction contractor.

We begin this part of the analysis by examining the meaning of the phrase "trade or business" as used in ORS 656.029(1). The meaning is plain from the ordinary usage of the words, particularly in light of the context of the purposes of the workers' compensation statutes. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). "Trade" is defined as: "**3 a :** the business one practices or the work in which one engages regularly : one's calling : gainful employment : means of livelihood[.]" *Webster's Third New Int'l Dictionary* 2421 (unabridged ed 2002) (boldface in original). In the same vein, "business" is defined as: "**b** (1) **:** a usu. commercial or mercantile activity customarily engaged in as a means of livelihood and typically involving some independence of judgment and power of decision," and "(4) **:** transactions, dealings, or intercourse of any nature * * * but now esp. economic (as buying and selling)[.]" *Id.* at 302 (boldface in original). Thus, the key aspects of a "trade or business" are that the activity is both regular and commercial in character.

The board concluded that, because Sorenson is building a house, he is in the "trade or business" of building homes, in addition to being in the business of farming. The board's conclusion was based on its determination that the residence was "built to increase the value of the farm for the possibility of future sale." The board's premise, that the construction activities were intended to "increase the value of the farm," supports only the conclusion that Sorenson is in the business of farming. A business owner typically seeks to increase the value of the enterprise. It does not follow, however, that seeking to improve the value of a farm enlists one in an altogether different occupation than farming.

Business operators regularly perform a host of activities incidental to the conducting of a business. Sweeping out the shop does not put one in the business of providing janitorial services. Sorenson's construction of a horse arena on his property did not make him a commercial builder. A separate "trade or business" is defined only when those incidental activities are regularly performed and have separate commercial character. If Sorenson regularly built horse arenas on other properties for money, he would have a separate horse arena construction business. But if, as found by the board, Sorenson's homebuilding was related to his farming business, it would corroborate his farming occupation, rather than proving a different enterprise.

The undisputed facts in the record show, moreover, that the homebuilding activity was not a separate business from Sorenson's primary occupations of horse training and farming. As noted earlier, a trade or business is an activity that one engages in or intends to engage in regularly as a means of obtaining money. Conducting a "trade or business" requires recurring activities that are commercial, rather than personal, in character, *i.e.*, the buying or selling of commodities or services. Not everything that is done for economic gain has that commercial character. Holding a garage sale does not make one a merchant. Selling an automobile does not make the seller a dealer. Likewise, constructing a house for personal use does not make the person a commercial homebuilder.[2]

Because Sorenson's homebuilding activities lack that commercial character and regularity, he is not in the "trade or business" of residential construction. Sorenson lists his occupation as a farmer on his tax returns and regularly

---

[2] Our interpretation of ORS 656.029(1) to require a necessary commercial component to "trade or business" furthers a "social insurance" policy underpinning of the Workers' Compensation Law. In *Woody v. Waibel*, 276 Or 189, 554 P2d 492 (1976), the Supreme Court held that the workers' compensation law was to be interpreted to effectuate two purposes: furtherance of the social bargain of giving up the right to litigation in exchange for limited compensation; and, "social insurance," the allocation of the financial risk of work-related injuries and deaths to the ultimate consumers as a "cost of doing business." 276 Or at 194 n 6; *see also Fincham v. Wendt*, 59 Or App 416, 422, 651 P2d 159, *rev den*, 294 Or 149 (1982). A commercial enterprise is needed in order to spread the risk of the liability created under ORS 656.029 for operation of a "trade or business" to consumers.

engages in horse training and farming as a means of liveli-hood. Sorenson has worked continuously as a horse trainer for the past 35 years. He uses his land to grow and sell hay and to train horses.

By contrast, Sorenson has not regularly engaged in constructing residential structures for a livelihood. He has no prior home construction experience and has never gained any income from construction projects. Thus, Sorenson's mere improvement of real property for personal use does not enroll him in the trade or business of commercial home construction for purposes of ORS 656.029(1).[3]

■ Our conclusion that Sorenson is exclusively in the business of horse training and farming does not end the inquiry.[4] The next question under ORS 656.029(1) is whether claimant's masonry labor in the construction of the residence is a "normal and customary part" of Sorenson's horse training and farming businesses. As refined by the administrative rule, that inquiry becomes whether the masonry work is part of the "day-to-day" activities of Sorenson's horse training and farming operations and "necessary" to the success of those operations. The board found that the residence was not being constructed "for the purpose of conducting business." Sorenson did not plan to conduct agricultural operations from the home or use it to house farm workers. The masonry work and the construction of the home have no functional relationship to Sorenson's farming and horse training activi-ties, much less a quality of being part of the "day-to-day" farming and horse training operations.

---

[3] That conclusion is consistent with *Caddy v. SAIF*, 110 Or App 353, 822 P2d 156 (1991). In *Caddy*, the Caddys, a husband and wife, were in the medical profes-sion. They operated as general contractors and designers in the construction of their personal use residence. At issue was whether the Caddys were noncomplying employers of a worker injured in the course of the construction of the residence. We concluded that there was substantial evidence to support the board's finding that the Caddys hired the claimant and controlled his work, so that the claimant was an employee of the Caddys. We also noted in *dictum* that the Caddys were not statu-tory employers of the claimant under ORS 656.029(1) because the "Caddys were not in the business of home construction, and they were not, accordingly, required to provide coverage for claimant under [ORS 656.029(1)]." *Id*. at 357 n 3.

[4] The factual conclusion that Sorenson is in the business of horse training and farming does not imply that a person cannot be engaged in more than one business or trade for purposes of accountability under ORS 656.029(1).

Moreover, construction of a house was not necessary to the success of those operations. In fact, the record suggests that quite the opposite may be true. The applicable agricultural zoning *precludes* new homes on Sorenson's farm, recognizing the oftentimes incompatibility of agricultural and residential uses of land. Rather than being *necessary* to the success of those operations, a house might well be a *hindrance* to farm uses. At the very least, a house has not been necessary to the past successful use of the property for horse training and farming. Thus, the home building is not part of the "day-to-day activities" that are "necessary to carry out the business" of horse training and farming under OAR 436-050-0040(4)(c).

LaTour argues that *K-Mart Corp. v. Claussing*, 162 Or App 558, 986 P2d 1185 (1999), controls the outcome of this case. *Claussing* concerned the responsibility of K-Mart Corporation for workers' compensation coverage of an injured employee of a sole proprietorship with which K-Mart had contracted for janitorial services. As noted above, in a prior review proceeding, we directed the board to consider K-Mart's accountability under ORS 656.029(1) in light of OAR 436-050-0040(4)(c). *Clausing*, 144 Or App at 554.[5] The board found that janitorial services were a normal and customary part of K-Mart's retail business and concluded that K-Mart was liable to the claimant under ORS 656.029(1). K-Mart did not seek review of that determination. Instead, K-Mart contended that its liability under ORS 656.029(1) was limited by ORS 656.029(2) because it contracted with an exempt employee. We did not apply ORS 656.029(1) in either proceeding, and the cases supply no precedent to this controversy.[6]

We conclude, then, that the record lacks evidentiary support for the required board findings that construction of a house is part of the day-to-day operations and necessary to

---

[5] The reports of both cases use different spellings of "Claussing" and Clausing."

[6] The outcome of this case, however, is consistent with the board's determination in *Claussing*. K-Mart was in the "trade or business" of operating a retail department store. Keeping the store clean was part of the day-to-day operation of that store and necessary to entice the patronage of customers. By contrast, the construction or use of a house is not part of Sorenson's day-to-day farming and horse training operations or necessary to their success.

the success of Sorenson's horse training and farming businesses. The house construction lacked the necessary nexus to Sorenson's businesses that is required by ORS 656.029(1) and the pertinent administrative rule.

Reversed and remanded.