Submitted November 3, 2015, affirmed March 9, 2016

In the Matter of the Compensation of
Randall Royer, Claimant.

Randall ROYER,
*Petitioner,*

*v.*

TOUCH OF GREY RANCH,
*Respondent.*

Workers' Compensation Board
1200006SD; A157574

369 P3d 1226

Christopher M. Potter and Kryger Alexander Carlson PC filed the opening brief for petitioner. With him on the reply brief was Kryger Carlson PC.

Brian L. Pocock filed the brief for respondent.

Before Sercombe, Presiding Judge, and Tookey, Judge, and Shorr, Judge.

SHORR, J.

## SHORR, J.

Claimant filed a workers' compensation claim after cutting his leg while milling lumber for use on building repairs at Lori Suskin and Gary Dempsey's property, Touch of Grey Ranch (employer). The Workers' Compensation Division (WCD) of the Department of Consumer and Business Services subsequently determined that claimant was not a subject worker entitled to workers' compensation coverage. After claimant requested a hearing, an administrative law judge (ALJ) upheld that determination on the ground that claimant's activities fell within the scope of the "householder" exemption for workers "employed to do gardening, maintenance, repair, remodeling or similar work in or about the private home of the person employing the worker." ORS 656.027(2).

Claimant now seeks judicial review of that order, raising four assignments of error. *See* ORS 656.740(5)(a) (establishing that an ALJ order on a nonsubjectivity determination is deemed to be a final order of the agency director); ORS 183.480 - 183.482 (providing for judicial review of final agency orders). We write to address only the third and fourth assignments, concerning the ALJ's determination that claimant is subject to the "householder" exemption in ORS 656.027(2). Because we conclude that claimant's work repairing an apartment dwelling near employer's residence qualified as work "in or about [employer's] private home," the ALJ did not err in determining that the exemption applied, and the order is therefore affirmed.[1]

We review the ALJ's findings of fact for substantial evidence and her legal conclusions for legal error. *Oregon Drywall Systems v. Natl. Council on Comp. Ins.*, 153 Or App 662, 666, 958 P2d 195 (1998). The pertinent facts, which are drawn from the ALJ's order, are supported by substantial evidence.

---

[1] In his first assignment of error, claimant contends that the ALJ applied an incorrect legal standard in determining that employer was not operating a trade or business. In his second assignment of error, claimant asserts that the ALJ's conclusion in that regard was not supported by substantial evidence. We reject both of those assignments without discussion.

Suskin and Dempsey, a married couple, operated Touch of Grey Polo Horses from 1985 through 2000, on a property in Junction City. The business primarily involved buying, boarding, training, and selling polo horses. They discontinued operations in 2000, after Dempsey was injured in a riding accident.

The couple moved to a property in Monroe in 2007. The property, which they called Touch of Grey Ranch, had some wooded acreage, a house (Suskin and Dempsey's personal residence), and outbuildings, including stables and an old hay barn. Although they kept some older horses on the property, they did not operate a polo horse business there.

Claimant, who had previously done work at the Junction City property, moved to the Monroe property. He received housing and limited funds in exchange for labor, which included "work on remodeling projects, repairs, gardening, fencing, logging trees, building arena walls, and infrequently watering or feeding horses." That work at times included felling and milling lumber for use on projects around the property. Suskin and Dempsey did not sell the lumber.

At some point after the move, Suskin and Dempsey hired a carpenter to convert the hay barn into two apartment units. Claimant and another individual both helped finish the interior of the apartments in exchange for being allowed to stay there.

In May 2012, claimant cut his leg with a chainsaw while running a mini-sawmill "to edge a board that would be used to shore up the timbers of the [hay barn] apartment unit." Claimant sought and received medical treatment and initiated a workers' compensation claim. Suskin and Dempsey—who maintained that claimant was not a subject worker—did not have workers' compensation insurance.

After conducting an investigation, the WCD issued a "Proposed and Final Nonsubjectivity Determination," concluding that claimant was a nonsubject worker under ORS 656.027(2), and therefore that Touch of Grey was "not a 'subject employer'" for workers' compensation purposes. Claimant contested that determination, and a hearing was held.

The ALJ issued an order affirming the WCD's determination. The ALJ made detailed findings of fact that supported her key factual findings that Suskin and Dempsey were not operating a business of any kind at the Monroe property and that claimant's work was of a personal, non-commercial nature:

"Lori Suskin and Gary Dempsey were not doing business as Touch of Grey Ranch when claimant was injured on the couple's property on May 25, 2012. The project consisting of milling lumber for remodeling was not included within a trade or business conducted by Touch of Grey. Neither were claimant's activities and labor on the ranch part of the normal 'day-to-day' activities that are 'necessary' to the success of a horse, rental housing, or lumber manufacturing trade or business.

"Touch of Grey's remodeling work is personal, and not commercial, in nature."

Based on those and other findings, the ALJ went on to conclude that claimant was not a "subject worker"[2] entitled to workers' compensation benefits, because claimant's work for Suskin and Dempsey, including the "remodeling of living quarters and the milling of lumber for construction projects on the Touch of Grey ranch," was not part of a trade or business and had no commercial character. As a result, the ALJ concluded that claimant's activities fell within the scope of the ORS 656.027(2) exemption for "'maintenance, repair, remodeling, or similar work' around a private home." In reaching those conclusions, the ALJ reasoned that "trading chores for housing did not create a rental business," and that the statutory exemption was not limited to "smaller, single-family residences unaccompanied by acres of land requiring significant physical and skilled labor to maintain." The ALJ also observed that the lumber that claimant felled and milled was exclusively for use on the property and there was no evidence that it was part of a commercial enterprise.

The ALJ also rejected claimant's contentions that his horse-related chores were in furtherance of the polo

---

[2] ORS 656.005(28) provides that "[s]ubject worker means a worker who is subject to this chapter as provided by ORS 656.027."

business, because the preponderance of the evidence demonstrated that claimant's work activities primarily involved "maintenance of the property, including his residence," and that the older, retired polo horses "were essentially pets," and were not part of a current polo horse business.

Claimant now seeks judicial review of the ALJ's order, challenging the ALJ's conclusion that claimant was a nonsubject worker under ORS 656.027(2). In his third assignment of error, claimant contends that the ALJ erred in concluding that his work at the time of the injury was "about" Suskin and Dempsey's "private home." He argues in his fourth assignment of error that the ALJ erred in concluding that the character of his work constituted "gardening, maintenance, repair, remodeling or similar work," within the exemption. As explained below, we conclude that the ALJ did not err in either respect.

ORS 656.027 provides, in relevant part:

"All workers are subject to this chapter except those nonsubject workers described in the following subsections:

"* * * * *

"(2) A worker employed to do gardening, maintenance, repair, remodeling or similar work in or about the private home of the person employing the worker."

Thus, once it has been established that a claimant is a "worker," *see* ORS 656.005(30), which claimant undisputedly is, ORS 656.027 requires an analysis of whether that worker is "nonsubject" under one of its exemptions. *DCBS v. Clements*, 240 Or App 226, 231-32, 246 P3d 62 (2010). The only issue here is the applicability of ORS 656.027(2), the householder exemption, which exempts work of a certain nature ("gardening, maintenance, repair, remodeling or similar work") done "in or about the private home of the person employing the worker."

As we have explained, the touchstone of that exemption is that the location and nature of the qualifying work are fundamentally private and noncommercial:

"The dispositive concept in this statutory provision is the term 'private,' which must be distinguished from the

concept of business or commercial premises. The basis of the householder exemption is the character of the home as a private place, not as business premises."

*Fincham v. Wendt*, 59 Or App 416, 419, 651 P2d 159, *rev den*, 294 Or 149 (1982).

The policy underlying the householder exemption is that workers' compensation insurance "is intended to spread to consumers of goods and services the cost of workplace injuries, by making the cost of the insurance a cost that can be reflected in the price of those goods and services." *Blevins v. Mitchell*, 138 Or App 29, 32, 906 P2d 293 (1995). It therefore follows that a homeowner who employs people to work "in or about the private home" in a noncommercial capacity cannot pass the cost of workers' compensation on to others. *Id.*

We have construed the scope of the exemption to include construction work on outbuildings near the home, emphasizing that outbuildings only qualify if they are private in character:

"Outbuildings are included in the exemption only because they are extensions of the home and, as such, share the same character as the home. In order for work done on outbuildings to fall within the exemption, the outbuildings must be of a private character rather than business or commercial."

*Fincham*, 59 Or App at 419 (the claimant was hired to work on an outbuilding located 65 feet from employer's residence; "Remodeling done not 'in' but 'about' a private home might well include renovation of an outbuilding, such as an attached or detached garage housing the family car."). We have also previously held that the exemption applied to a worker who was living rent-free in an "unhabitable" home in exchange for remodeling it. *See Blevins*, 138 Or App at 31. The homeowner, who was not presently occupying the home, had planned to move into it upon completion of the work. *See id.*

Significantly, in *Blevins*, the fact that the homeowner provided housing in exchange for labor did not render the character of the property commercial. The dispositive fact was that the home was being remodeled purely for the

homeowner's personal use, and therefore was a "private home"—and, conversely, that it was *not* on or destined for the rental market, a circumstance that would have resulted in the opposite result. *Id.* at 33. Thus, under *Fincham* and *Blevins*, an apartment or guest house near an employer's home qualifies under the householder exemption only if it is truly an extension of the home and shares the same private character as the home. In making that determination, we particularly consider whether an apartment or guest house is a rental (and therefore capable of producing income), or whether its purpose is exclusively private and noncommercial, such as to lodge visitors and workers.

In this case, there is no evidence in the record that the barn apartment claimant was repairing was ever used as a rental or that anyone ever paid to stay there; rather, the evidence shows that it was exclusively for a private, noncommercial use, to lodge visitors and workers (as claimant's extended residence there demonstrates). Given that, and given its close physical proximity to Suskin and Dempsey's home, the ALJ's conclusion that claimant's work on the apartment was "about" employer's "private" residence is consistent with the above-described construct. Accordingly, the ALJ, which applied the correct legal standard, did not err in concluding that the exemption applied.

We proceed to the fourth assignment of error, which requires us to consider what type of work qualifies under ORS 656.027(2). Our case law on this point is limited, although we have held that major residential remodel and repair projects qualify for the householder exemption. *See Blevins*, 138 Or App at 31 (the claimant was hired to remodel an "unhabitable" house); *Fincham*, 59 Or App at 418 (the claimant was hired to expand a cold storage room in an outbuilding).[3] New construction, however, does not qualify, as it does not bear sufficient similarity to "gardening, maintenance, repair, or remodeling," all of which "have most in common * * * that they occur in or about an *existing*

---

[3] In *Fincham*, we held that the householder exemption did not apply because the outbuilding that the claimant was hired to remodel was used in a commercial enterprise; the nature of the claimant's work was not the disqualifying factor. 59 Or App at 423.

home." *Caddy v. SAIF Corp.*, 110 Or App 353, 357, 822 P2d 156 (1991) (emphasis in original).

We have not previously considered whether heavy, skilled work on large properties of the kind claimant sometimes performed qualifies as "gardening, maintenance, repair, remodeling or similar work." Claimant argues that such work, particularly tree felling and lumber milling, are "traditionally industrial activities," and suggests that the ALJ's decision "releases any reasonable limitation on what homeowners can instruct an employee to do while not being obliged to provide workers' compensation coverage."

That argument is unavailing for the following reasons. First, the exemption, which by its terms applies to "gardening, maintenance, repair, remodeling or similar work," encompasses "a wide variety of employment activities." *Anfilofieff v. SAIF*, 52 Or App 127, 132, 627 P2d 1274 (1981). Here, it includes activities necessary to the maintenance of rural households with acreage and outbuildings; such residential properties require significant maintenance, including of the kind that claimant regularly performed. Felling trees for maintenance purposes, and harvesting lumber for use on the property may require certain equipment and skills; nevertheless, it is work that many homeowners must regularly perform themselves or hire out, not to earn income, but as maintenance.

As for the use of the chainsaw to cut boards for repairs to the hay barn apartment, the activity in which claimant was engaged at the time of his injury, under the circumstances, we conclude that that activity also falls within the scope of the exemption. Because claimant's regular maintenance and repair duties entailed the use of lumber cut to size, which, in turn, required the use of the chainsaw and mini-sawmill, that activity was encompassed within "maintenance, repair, remodeling, or similar work."

We further observe that, even if converting a hay barn into apartments would be more akin to new construction than to a remodel, at the time claimant was injured, the apartments were already constructed and he had been residing in one of them for a number of years. Thus, even if the householder exemption may not have applied to the initial

construction of the apartment dwellings under *Caddy*, 110 Or App 353, at the time of the injury, claimant was repairing the floor of an existing structure, not constructing a new one.

The ALJ did not err in concluding that claimant was a nonsubject worker under ORS 656.027(2).

Affirmed.