714 P.2d 584

**SOLAR AGE MANUFACTURING, INC.,
Petitioner-Appellant,**

v.

**EMPLOYMENT SECURITY DEPARTMENT and Allen Kennish,
Respondents-Appellees.**

No. 15844.

Supreme Court of New Mexico.

Feb. 19, 1986.

Louis J. Vener, Albuquerque, for petitioner-appellant.

Richard Baumgartner, Sp. Asst. Atty. Gen., Albuquerque, for respondents-appellees.

## OPINION

RIORDAN, Chief Justice.

Allen Kennish (Kennish) filed a claim for unemployment benefits based on compensation received by him from the sale of solar collectors for Solar Age Manufactur-

ing, Inc. (Solar Age). Solar Age protested the claim, and with the Employment Security Department (ESD) representing Kennish, the Board of Review found in favor of ESD. Solar Age appealed to the district court who affirmed the decision of the Board and dismissed the appeal. We reverse.

Solar Age raises five issues on appeal. However, NMSA 1978, Section 51–1–42(F)(5) (Cum.Supp.1985) is dispositive and we therefore do not address the other issues raised. This subsection states in pertinent part:

F. "employment" means:

\* \* \* \* \* \*

(5) services performed by an individual for an employer for wages \* \* \* unless and until it is established by a preponderance of evidence that:

(a) such individual has been and will continue to be free from control or direction over the performance of such services both under his contract of service and in fact;

(b) such service is either outside the usual course of business for which such service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and

(c) such individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the contract of service[.]

## A. Degree of Control.

The facts established in the hearing before the Board of Review were that salespersons for Solar Age were not restricted to any particular area and were free to sell at any hours. Every sale was made on Solar Age invoices and all checks were made payable to Solar Age. Solar Age installed and repaired all of the products. Commissions were paid by Solar Age to the salesperson. Solar Age states that the invoice and money control were necessary in order to protect the customer against poor

workmanship, fraud, and to insure proof on state and federal tax credit claims. The compensation the salesperson received was the difference between the selling price and the wholesale price. The salesperson had complete control over the price the customer was charged. Though Solar Age had a suggested price list, the salesperson did not have to abide by it and could sell the product at a greater price or below wholesale price and sustain a loss. As long as Solar Age received its wholesale cost, they had no concern as to the price charged for the product.

Salespersons could come into the Solar Age office whenever they wished but were not required to come in. Most salespersons came in only to turn in orders. Telephones were available for their use. Salespersons had no quotas and were required to provide their own transportation. They were not restricted in the manner of presentation and were not specifically trained with a "sales pitch". They were allowed to sell other products from other wholesalers, including competitors. They were allowed to advertise on their own. Solar Age argues that these factors are evidence that Kennish was an independent contractor rather than an employee because Solar Age had virtually no control over his actions.

This is a case of first impression in New Mexico. However, other jurisdictions have decided the issue of how much control is necessary before a person is classified as an "employee".

The court in *M & L Distributors, Inc. v. State*, 479 So.2d 301 (Fla.App.1985) overruled a decision by a hearing officer and found a salesperson of swimming pool cleaners to be an independent contractor. The court looked at these pertinent control factors: salespersons set their own days and hours of work; sales were performed outside and door-to-door; salespersons provided their own transportation; they established their own routes and selling methods; they were not obligated to attend sales meetings; and no quotas were established. Further, the training of the salespersons was minimal; there was no direct

supervision over day-to-day activities; and both company and salesperson considered the relationship to be that of an independent contractor.

The facts in *M & L Distributors* are very similar to those in the instant case except for the required use of Solar Age invoices and payment by Solar Age of a commission. Also, the fact that Solar Age salespersons could sell other products, including competitors' products, could advertise on their own, and could charge whatever price they wished is evidence of non-control.

In *Wallis v. Sec. of Kansas Dep't. of Human Res.*, 236 Kan. 97, 689 P.2d 787 (1984), the court found a door-to-door vacuum cleaner salesperson to be an employee. The distinguishing factors were in the degree of control. The salespersons used a "Kirby" sales kit, a "Kirby" sales pitch and they were accompanied by experienced "Kirby" dealers. An Oregon court, using a similar rationale as that used in *Wallis*, also found "Kirby" vacuum cleaner salespersons, in a similar factual situation, to be employees. *See Kirkpatrick v. Peet*, 247 Or. 204, 428 P.2d 405 (1967). The control exercised by Kirby was much more stringent than that exercised by Solar Age in the instant case and exemplifies the type of control necessary before one can be classified as an employee rather than an independent contractor.

*Matter of Compensation of Henn*, 60 Or.App. 587, 654 P.2d 1129 (1982), *review denied*, 294 Or. 536, 660 P.2d 682 (1983), held that a magazine salesperson was an independent contractor and not an employee. The court found that the evidence of control was slight since no particular hours were required, salespersons were trained but could personalize their sales pitch, salespersons could engage in other work and could sell other products, and salespersons used their own automobiles. Further, it was preferred that salespersons work eight hours per day and phone in receipts every day, but they were not required to do so.

The court in *Sirotkin Travel Ltd. v. Ross*, 63 A.D.2d 1095, 406 N.Y.S.2d 380

(1978) found a travel salesperson to be an independent contractor despite the fact that the salesperson used the travel agency desk space, telephone, validation machine, literature and cards. In addition, the trips were arranged in the name of the agency.

South Dakota has a statute that is similar to Section 51–1–42(F)(5) and in *South Dakota Dep't. of Labor v. Tri State Insulation Co.*, 315 N.W.2d 315 (S.D.1982), it was decided that the non-control portion of the statute had been satisfied. Tri State sold insulation products such as awnings, windows and sidings. Its salespersons met no set schedules and could work any number of hours per week. They were not required to report in and received no supervision. They paid all their own expenses and had no established territory. Salespersons could perform simultaneously the same sales services for other companies, including competitors. They were not discharged if they were not productive. Tri State's only control was its right to accept or reject orders submitted to it by the salespersons. In determining that Tri State's salespersons were independent contractors, the court weighed the various control factors.

The facts in *South Dakota Dep't. of Labor v. Tri State Insulation* are very similar to those presented in this case. Thus, weighing the various control factors, *e.g.*, the use of Solar Age invoices and the distribution of the commission, against the non-control factors, *e.g.*, Solar Age had no control over what price was charged, how much commission a salesperson made, Solar Age did not supervise its salespersons and did not require them to sell, etc.; we determine that the lack of control by Solar Age and the independence of its salespersons is evident. Kennish was free from control or direction over the performance of his job as a salesperson.

## B. Services Performed Outside the Place of Business.

Kennish was not assigned a route or schedule. He was free to sell anywhere. Testimony was given that most of the products were sold in the customers' homes or at fairs or anywhere the salespersons parked their displays. The Solar Age office and telephone were available for the salespersons to use; however, the services were performed outside the office. Salespersons purchased their own sales kits and many also purchased display trailers. These were used to aid the salesperson in the sale. Based on the above facts, we determine that salespersons' services were performed mainly outside the usual place of Solar Age's business.

## C. Independently Established Trade.

■ The adverb "independently" modifies the work "established" and means that the trade, occupation, profession or business was established independently of the employer. *See Vermont Securities, Inc. v. Vermont Unemployment Comp. Comm'n*, 118 Vt. 196, 104 A.2d 915 (1954). If Kennish had an established business of selling, to render him an independent contractor it must have operated and existed independently from that of Solar Age. Salespersons need little more than an automobile and a pen to carry on their tangible trade. They have a proprietary interest in their skills. That they may be temporarily unemployed if not selling products for Solar Age or its competitors, or any other distributor of products, is not determinative of the issue. *South Dakota Dep't. of Labor v. Tri State Insulation.* This argument is applicable to any tradesperson (*e.g.*, lawyer, doctor); if no one among a patented clientele needs his services at a certain time, he is unemployed, but this would not make him eligible for unemployment compensation. *North American Builders, Inc. v. Unemployment Comp. Div.*, 22 Utah 2d 338, 453 P.2d 142 (1969).

In the instant case, the activities of salespersons for Solar Age have the attributes of an independently established occupation. Were they not selling Solar Age products, they would be selling those of someone else. In fact, some salespersons sold other products at the same time.

### D. Conclusion

■ We determine that the relationship between Solar Age and Kennish meets, by a preponderance of the evidence, the three factors required by Section 51–1–42(F)(5) to negate employment. Thus, the decision of the district court is reversed.

In so holding we do not suggest that every relationship between wholesaler, retailer, manufacturer and salesperson is that of an independent contractor. Each situation must be viewed in light of Section 51–1–42(F)(5) and satisfy each of its parts before an independent contractor relationship can be established for purposes of determining whether unemployment compensation benefits should be paid.

IT IS SO ORDERED.

FEDERICI and WALTERS, JJ., concur.