**Certiorari Denied, March 4, 2010, No. 32,218**

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**Opinion Number: 2010-NMCA-029**

**Filing Date: January 11, 2010**

**Docket No. 28,774**

**MONICA ELOISE KORBA, individually and as Personal Representative of the Estate of BRANDY ROSE KORBA, deceased, and as Next Friend for BRYCE AARON KORBA, a minor; RUBY GERANDT, individually and as Personal Representative of the Estate of ALICIA GERANDT, deceased; RICHARD HOOKE; and STEVEN ROUSE,**

  **Plaintiffs-Appellants,**

**v.**

**ATLANTIC CIRCULATION, INC., a Delaware Corporation; JAIME R. MILLER; MICHELLE R. SANCHEZ; DOES 1-20 inclusive; DOE MANAGERS 1-5 inclusive; and DOE CORPORATIONS 1-5 inclusive,**

  **Defendants-Appellees.**

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**John A. Dean, Jr., District Judge**

The Branch Law Firm
Turner W. Branch
Albuquerque, NM

for Appellants

Gerding & O'Loughlin, P.C.
Michael T. O'Loughlin
Farmington, NM

for Appellees

### OPINION

1

**VIGIL, Judge.**

**{1}**     This is a personal injury case in which Atlantic Circulation, Inc., a magazine subscription processing company, obtained summary judgment on the basis that magazine sales managers and salespersons were not its employees. Plaintiffs appeal, and we affirm.

**BACKGROUND**

**{2}**     Sales managers and salespersons who process sales subscriptions through Atlantic Circulation were riding in a 1992 Chevrolet Suburban overloaded with fifteen people when a rear tire blew out, resulting in a single-vehicle accident. The vehicle was driven by Jaime Miller and owned by Michelle Sanchez. Two persons, Brandy Korba and Alicia Gerandt were killed, and two others, Richard Hooke and Steven Rouse, were injured. Korba and her estate, Gerandt and her estate, Hooke, and Rouse are Plaintiffs and allege a variety of claims based upon the accident. The liability of Atlantic Circulation hinges on whether it was the employer of Miller, Sanchez, Korba, Gerandt, Hooke, or Rouse at the time of the accident.

**{3}**     Atlantic Circulation moved for summary judgment on the basis that it was not the employer of Miller, Sanchez, Korba, Gerandt, Hooke, or Rouse. The district court granted summary judgment and dismissed the complaint with prejudice. Plaintiffs appeal.

**STANDARD OF REVIEW**

**{4}**     Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 1-056(C) NMRA. Whether this standard is satisfied presents a question of law, which we review de novo. *Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582. As the movant, Atlantic Circulation was required to make a prima facie showing that it was entitled to summary judgment. *See Savinsky v. Bromley Group, Ltd.*, 106 N.M. 175, 176, 740 P.2d 1159, 1161 (Ct. App. 1987) (noting that the defendant satisfied its burden to obtain summary judgment by establishing it did not have the ability to control the work of the alleged employee). Once Atlantic Circulation satisfied its burden, the burden shifted to Plaintiffs to establish the existence of a genuine issue of material fact. *Ciup v. Chevron U.S.A., Inc.*, 1996-NMSC-062, ¶ 7, 122 N.M. 537, 928 P.2d 263 ("[T]he opponent must come forward and establish with admissible evidence that a genuine issue of fact exists.").

**DISCUSSION**

**A.     Distinguishing an Employee From an Independent Contractor**

**{5}**     New Mexico courts have utilized the right to control test to determine whether an employer-employee or independent contractor relationship exists. *Celaya v. Hall*, 2004-NMSC-005, ¶ 11, 135 N.M. 115, 85 P.3d 239. The test focuses on "whether the principal

2

exercised sufficient control over the agent to hold the principal liable for the acts of the agent." *Id.* ¶ 12. Recognizing that the right to control test is more complex and "demands a more nuanced approach, than simply determining the degree of control over the details or methods of the work[,]" our Supreme Court has adopted the method used by the Restatement (Second) of Agency § 220(a)-(j) (1958) to distinguish an employee from an independent contractor. *Celaya*, 2004-NMSC-005, ¶ 14.

{6}    The Restatement approach continues to consider the degree of control exercised by the principal over the details of the agent's work, but this factor is not exclusive. *Id.* ¶ 15. The analysis also requires an assessment of other factors which include: "1) the type of occupation and whether it is usually performed without supervision; 2) the skill required for the occupation; 3) whether the employer supplies the instrumentalities or tools for the person doing the work; 4) the length of time the person is employed; 5) the method of payment, whether by time or job; 6) whether the work is part of the regular business of the employer; 7) whether the parties intended to create an employment relationship; and 8) whether the principal is engaged in business." *Id.* A complete analysis may require the court to evaluate "the circumstances unique to the particular case." *Id.* In the court's consideration of the Restatement factors,

> "[N]o particular factor should receive greater weight than any other, except when the facts so indicate, nor should the existence or absence of a particular factor be decisive. Rather, the totality of the circumstances should be considered in determining whether the employer has the right to exercise essential control over the work or workers of a particular contractor."

*Id.* (alteration in original) (quoting *Harger v. Structural Servs., Inc.*, 121 N.M. 657, 667, 916 P.2d 1324, 1334 (1996)).

## B.    The Undisputed Material Facts

{7}    The material facts establishing the relationships of sales managers and salespersons with Atlantic Circulation are undisputed. Atlantic Circulation is a processing center for direct sales of magazine subscriptions. Atlantic Circulation's practice is to enter into independent contractor agreements with sales managers throughout the country. Sales managers in turn each hire their own sales crews—salespersons who sell magazine subscriptions to consumers. It is also the practice for sales managers to enter into a separate independent contractor agreement with salespersons, called an "Agreement for Subscription Solicitation Services."

{8}    Atlantic Circulation has independent contractor agreements with sales managers Korba and Sanchez. There is no agreement in the record for Miller, who was the driver. He is a defendant, but was never served. However, Hooke, who was a salesperson and a passenger in the van, testified that Miller was also a sales manager, and his testimony is not disputed. Each sales manager operates his or her crew as a separate company, with a different name. Korba's sales company was called Korba Sales, and Sanchez's sales company was called either Power Sales, Inc., or Strictly Business, Inc. The independent

3

contractor agreement between Atlantic Circulation and the sales managers expressly states, "[Atlantic Circulation] desires to engage Contractor as an independent contractor to perform certain solicitation for magazine and book subscriptions and Contractor desires to perform the solicitation as an independent contractor under the terms and conditions set forth herein." The agreement further provides, "The parties intend this Agreement to create an independent contractor relationship and not an employer-employee relationship. Nothing in this agreement shall be interpreted or construed to create an employer-employee relationship."

**{9}** Plaintiffs rely upon *Chevron Oil Co. v. Sutton* to argue that the independent contractor agreements are not dispositive of the issue of whether there is an employee-employer relationship. 85 N.M. 679, 681, 515 P.2d 1283, 1285 (1973) ("[T]he manner in which the parties designate a relationship is not controlling."). While we agree that the agreements on their own do not establish that the sales managers were independent contractors, the agreements are persuasive under our totality of the circumstances analysis. *See* Restatement (Second) of Agency § 220(2)(i) (listing one factor as "whether or not the parties believe they are creating the relation of master and servant"); *see also In re Comp. of Henn*, 654 P.2d 1129, 1131 (Or. Ct. App. 1982) ("While the fact that either or both of the parties considered their relationship to be that of independent contractor is not controlling, a plain statement that the parties intend the relationship of independent contractor and not employe[e] is not always to be disregarded." (citation omitted)). The contractual agreements between Atlantic Circulation and the sales managers, as well as the salespersons, are highly indicative of the parties' state of mind concerning the nature of their relationship.

**{10}** According to Atlantic Circulation, sales managers are paid through a credit/debit system which keeps a running track of commissions due and money owed by the sales managers. Ongoing expenses may be paid through the use of a card similar to a credit or debit card, but those expenses are deducted from the sales manager's running account with Atlantic Circulation. Atlantic Circulation produced Korba's credit and expense sheet which contains a record of the credits and debits to her account while as a sales manager. To the extent that Plaintiffs rely upon Hooke's testimony to establish a material fact concerning the method of compensation, Hooke himself testified that he had no personal knowledge of the "com card" and that the managers never told him anything. *See* Rule 1-056(E) ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.").

**{11}** Plaintiffs also argue summary judgment is inappropriate because they claim there is a dispute over whether Atlantic Circulation paid for the maintenance and repairs to the vehicle, as well as other expenses sales managers incurred. Assuming Atlantic Circulation paid for the repairs to the vehicle and for other expenses, this does not establish that Atlantic Circulation exercised a right of control over the details of the sales managers' tasks. Plaintiffs have failed to present any evidence that Atlantic Circulation determined where the sales teams traveled, when vehicles repairs were to be made, what expenses were to be incurred, or any other indication that Atlantic Circulation had exercised a right to control the details of the sales teams work.

4

**{12}** Sales managers are free to hire and fire as many or as few salespersons as they wish. Sales managers also determine where and when to solicit subscriptions. Atlantic Circulation does not determine work hours or work areas for the sales crews. There are no production quotas required of the sales managers, nor are they required to sell magazine subscriptions only for Atlantic Circulation. Atlantic Circulation does not withhold state and local taxes from the sales managers.

**{13}** Gerandt, Hooke, and Rouse were salespersons. While there is a written agreement between Reagan and Hooke in the record, Hooke disputes its authenticity, and Atlantic Circulation conceded that the agreement was not signed by him for purposes of the summary judgment motion. However, there is no dispute that Hooke was a salesperson. In the "Subscription Solicitation Services" agreements, sales managers are identified as the "Sales Company," and these agreements also expressly state that the salesperson is an independent contractor and not an employee of the "Sales Company." The Sales manager agrees to provide the salesperson with information concerning the necessary procedures for magazine subscription processing, the forms to be used and to make the forms, price lists, and other printed material available to the salespersons.

**{14}** When soliciting magazine subscriptions, salespersons display a laminated identification card to potential customers with the name of the salesperson, the name of Atlantic Circulation, the words, "magazine sales subscription," and information about the salespersons' participation in a contest to sell magazines. Plaintiffs rely on *Singer v. Star*, 510 So. 2d 637 (Fla. Dist. Ct. App. 1987), to argue this is a material fact requiring reversal. However, *Singer* is not applicable. First, summary judgment was improperly granted in that case because discovery was outstanding. *Id.* at 639. Secondly, the plaintiffs in that case were relying on a theory of apparent authority to hold a newspaper company liable for the acts of one of its salespersons, and Plaintiffs successfully contended certain evidence, which included identification badges issued to minors by the newspaper company who were selling its newspapers, precluded summary judgment on this theory of liability. *Id.* at 640-41. Apparent authority as a theory of liability is not an issue in this case.

**{15}** If a customer pays for a magazine subscription by check, the customer makes the check payable to Atlantic Circulation. Salespersons give customers a receipt in the name of Atlantic Circulation, and customer service calls are directed to Atlantic Circulation. Customers are also given Atlantic Circulation's web site address by salespersons so they can verify the salesperson's connection with Atlantic Circulation, and how many subscriptions that salesperson sold. If a salesperson is away from his or her home state while selling magazine subscriptions and wants to go home, Atlantic Circulation arranges for a bus ticket, but the sales managers pay for the ticket. In the context of this case, these facts are insufficient to create a genuine issue of material fact on the question of whether Atlantic Circulation had an employee-employer relationship with the sales crews. These procedures are not "control" in the sense that Atlantic Circulation directed the operation of the sales crews. Instead, they are incidental requirements necessary to the relationship between a magazine subscription processing company and independently operating magazine subscription solicitors.

5

## C. Analysis of the Material Facts

**{16}** We apply the Restatement approach as described in *Celaya* to determine whether Atlantic Circulation established a prima facie showing that it was entitled to summary judgment and whether Plaintiffs then produced admissible evidence that a genuine issue of material fact exists on whether Atlantic Circulation was the employer of Miller, Sanchez, Korba, Gerandt, Hooke, or Rouse at the time of the accident. We consider the degree of control exercised by Atlantic Circulation over the details of the work performed by the managers and salespersons, and also assess what the summary judgment record shows as to the other factors set forth in Section 220(a)-(j) of the Restatement (Second) of Agency. *Celaya*, 2004-NMSC-005, ¶ 15.

**{17}** As to the sales managers, Korba, Sanchez, and Miller, there is no issue of material fact for a jury to decide. The sales managers enter into independent contractor agreements with Atlantic Circulation, and each operates his or her crew as a separate company to sell magazine subscriptions to consumers. Sales managers are free to hire and fire their salespersons, and they determine where and when to solicit subscriptions. The sales managers have no production quotas, and they are not required to sell only for Atlantic Circulation. Sales managers are paid through a credit/debit system which keeps a running track of commissions due and money owed by the sales managers, and Atlantic Circulation does not withhold state and local taxes from sales managers.

**{18}** We find *Bond v. Harrel*, 108 N.W.2d 552 (Wis. 1961) persuasive. In this case, the question presented was whether the manager of a magazine salesperson's crew was an employee or independent contractor of a magazine subscription processing company when his automobile was involved in a motor vehicle accident, which resulted in the death of the plaintiff's decedent. *Id.* at 553. The magazine subscription processing company contended it was entitled to summary judgment on grounds that the sales manager was an independent contractor and not its employee. *Id.* The court used a right to control test and concluded the sales manager was an independent contractor. *Id.* at 555. As in the case before us, the magazine subscription processing company operated through solicitation crews and salespersons. *Id.* at 554. The sales crews were free to travel where they wished to make their house-to-house solicitations. *Id.* Crew managers were designated as independent contractors who hire and make their own contract for compensation with salespersons. *Id.* Crew managers had no quota, they were paid on a commission basis, and they paid their salespersons out of their commissions. *Id.* The company furnished the receipt forms, report forms to be used, envelopes, and sales materials which were to be used by the sales manager and his crew. *Id.* The sales manager was also furnished with a field manager credential which authorized him and the members of his crew as representatives of the company. *Id.* The company had no sales meeting or training program. *Id.* The company did not provide cars or means of transportation, it did not pay any expenses, and it did not withhold taxes. *Id.*

**{19}** We also conclude that as to the salespersons, Gerandt, Hooke, and Rouse, there is no issue of material fact for a jury to decide. Salespersons are hired and fired by their sales managers independent of Atlantic Circulation. Their employment agreement is with the

6

sales company operated by their respective sales managers, and not Atlantic Circulation. Atlantic Circulation does not determine work hours or areas for sales crews—these are decisions which are made exclusively by the sales managers. In addition, the sales managers tell the sales crews what the procedures are for processing magazine subscriptions, and they provide their sales crews with the forms, price lists, and other necessary printed material.

{20}    Our Supreme Court has previously addressed whether a salesperson is an employee or independent contractor within the context of our unemployment compensation statute. *Solar Age Mfg., Inc. v. Employment Sec. Dep't*, 103 N.M. 780, 714 P.2d 584 (1986). *See* NMSA 1978, § 51-1-42(F)(5) (2007) (defining "employment" to qualify for unemployment benefits). In deciding the issue, the court used the right to control test without considering the additional Section 220(a)-(j) Restatement factors. *Solar Age Mfg., Inc.*, 103 N.M. at 781-82, 714 P.2d at 585-86. We therefore consider this decision persuasive, while acknowledging it is not controlling. In *Solar Age*, the salesperson was free to operate in any location, he chose his own hours, he was not restricted on the manner of how the sale was presented, he was allowed to advertise on his own, he was allowed to sell other products from other wholesalers, including competitors, he was paid on a commission basis, he had no quotas, sales were completed with Solar Age invoices, and checks were made payable to Solar Age. *Id.* Because the salesperson "was free from control or direction over the performance of his job as a salesperson," the Supreme Court concluded that the salesman was not an employee, but an independent contractor. *Id.* at 783-84, 714 P.2d at 587-88.

{21}    Significantly, in deciding *Solar Age* our Supreme Court specifically considered *In re Compensation of Henn* and found it to be persuasive. *Solar Age Mfg., Inc.*, 103 N.M. at 782, 714 P.2d at 586. *In re Compensation of Henn* concluded that a traveling magazine salesperson, under circumstances very similar to the case now before us, was an independent contractor and not an employee. 654 P.2d at 1130-31. The salesperson sold magazine subscriptions as an "authorized representative," and had a "Representatives' Agreement" with the company in which she was designated as an independent contractor. *Id.* at 1129 (internal quotation marks omitted). The company provided a training session for its salespersons and supplied invoices and other materials. *Id.* at 1130. The plaintiff used her own vehicle when selling subscriptions, no particular working hours were specified, she was paid on a commission basis, no income taxes were deducted from commissions, and the salesperson was free to engage in other employment. *Id.* at 1129-30. Utilizing a right to control test, these facts were sufficient for the court to conclude that the salesperson was an independent contractor. *Id.* at 1130-31.

{22}    In *Indiana Insurance Co. v. American Community Services, Inc.*, the Indiana Court of Appeals decided a nearly identical case. 768 N.E.2d 929 (Ind. Ct. App. 2002). A processor of magazine subscriptions had independent contractor agreements with sales managers, who in turn had independent contractor agreements with their salespersons. *Id.* at 930. A van owned by a husband-wife crew manager was carrying a sales crew when it was involved in a single-vehicle accident, and one of the salespersons was killed. *Id.* The court considered the factors set forth in Restatement (Second) of Agency § 220(a)-(j), and concluded that the magazine salesperson was an independent contractor and not an employee of the magazine subscription company. *Indiana Ins. Co.*, 768 N.E.2d at 937. It held,

7

"[g]iven the weight of such important factors as [the company]'s limited control and supervision, the intent of the contracting parties, and the existence of multiple layers of independent contracts between [the company], its crew managers, and salespeople, we find that . . . [the salesperson] was not an employee." *Id.* at 939.

**{23}** We therefore conclude that based on the record before us, Plaintiffs have not raised a genuine issue of material fact as to Atlantic Circulation's right to exercise essential control over the work of the sales managers or salespersons such that a jury could find an employee-employer relationship. The undisputed facts show the following. Sales managers enter into independent contractor agreements with Atlantic Circulation, the terms of which expressly define the relationship. There is no evidence that Atlantic Circulation controls the details of how sales managers operate daily. Atlantic Circulation does not determine where sales crews operate, how long they operate in one location, or how many hours they work. Atlantic Circulation provides no supervision or direction and sales crews operate autonomously. The salespersons are expressly hired by each sales manager to work for that sales manager, and the details of the salesperson's work is directed and controlled by the sales manager of each crew, not Atlantic Circulation. Thus, Plaintiffs have not provided any material facts that would allow a jury to find that Atlantic Circulation had an employee-employer relationship with Miller, Sanchez, Korba, Gerandt, Hooke, or Rouse at the time of the accident.

**CONCLUSION**

**{24}** We affirm the district court order granting Defendant Atlantic Circulation summary judgment and dismissing the complaint with prejudice.

**{25}** **IT IS SO ORDERED.**

_____
**MICHAEL E. VIGIL, Judge**

**WE CONCUR:**

_____
**CELIA FOY CASTILLO, Judge**

_____
**LINDA M. VANZI, Judge**

**Topic Index for *Korba v. Atlantic Circulation, Inc.*, No. 28,774**

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-SR | Standard of Review |
| | |
| **CP** | **CIVIL PROCEDURE** |
| CP-SJ | Summary Judgment |

**EL**                                   **EMPLOYMENT LAW**
EL-DE                             Duties of Employee and Employer
EL-EE                             Employer-Employee Relationship
EL-IC                             Independent Contractor

**NG**                                   **NEGLIGENCE**
NG-AG                             Agency
NG-WG                            Wrongful Death